[Crim. No. 1204.  First Appellate District, Division Two.—November 7, 1924.]

THE PEOPLE, Respondent, v. S. J. PEARSON, Appellant.

[1] CRIMINAL LAW—OBTAINING MONEY BY FALSE PRETENSES—FALSE REPRESENTATION OF PAYMENT OF LUMBER BILL BY CONTRACTOR—PLEADING—EVIDENCE—APPEAL.—In a prosecution upon an information charging that defendant, who contracted to build a house for the complaining witness, obtained a sum of money from the latter upon the false pretense and representation that he had paid a bill for lumber used in said house, where none of defendant's points, relating to alleged defects in the information, was raised at the proper time by demurrer to the information, and they were placed beyond all possible doubt by the proof, the errors in pleading, if any, would not warrant a reversal of the judgment in view of the evidence demanding a conviction of defendant and of section 4½ of article VI of the constitution.

[2] ID.—PLEADING—EVIDENCE.—In such prosecution, if it be conceded that the allegation in the information to the effect that the complaining witness believing the false and fraudulent pretenses and representations made by defendant, and being deceived thereby, was induced by said false pretenses and representations to pay over and deliver to defendant a sum of money, might well have been more definite, nevertheless the judgment of conviction will be sustained.

[3] ID.—EVIDENCE.—In such prosecution, the argument of defendant to the effect that if the prosecuting witness received what she bargained for or if the defendant was entitled to the money which

1. See 14 R. C. L. 211; 11 Cal. Jur. 87.
2. Necessity and sufficiency of allegations in indictment for false pretenses as to causal connections between the false pretense and the loss, note, 27 L. R. A. (N. S.) 363. See, also, 11 R. C. L. 857; 12 Cal. Jur. 464.

he received from her, there was no crime committed, has no practical application to the facts of the case.

[4] ID.—OBTAINING RECEIPT BY MEANS OF WORTHLESS CHECK—FALSE TOKEN OR WRITING.—In such prosecution, where the defendant, in order to convince the prosecuting witness that a bill for lumber had been paid, obtained a receipted bill from the lumber company by means of a worthless check given by him in ostensible payment of the bill, such receipted bill was a false token or writing within the meaning of section 1110 of the Penal Code.

[5] ID.—SECTION 1110, PENAL CODE—EVIDENCE.—In such prosecution, the evidence shows a further compliance with section 1110 of the Penal Code, in that the pretenses were proven by the testimony of the prosecuting witness and by corroborating circumstances.

[6] ID. — DILIGENCE — EVIDENCE. — In such prosecution, the evidence shows that the prosecuting witness exercised every precaution that a prudent person would exercise with reference to ascertaining whether or not the lumber company had been paid at the time the receipted bill was presented to her.

[7] ID.—PAYMENT BY CHECK—WHEN EFFECTIVE.—In such prosecution, the contention that the representation made by defendant was true because the bill had been paid by check cannot be sustained, since a check does not satisfy a debt, in the absence of a special agreement that it shall do so, until and unless it is paid by the bank upon which it is drawn.

[8] ID. — EVIDENCE OF UNPAID BILLS — ADMISSIBILITY OF. — In such prosecution, the introduction of evidence of unpaid bills upon the building was not error and did not have a tendency to prejudice defendant in the eyes of the jury where such evidence was pertinent in the light of defendant's contention that if the prosecuting witness received her home in the condition and under the circumstances called for by her contract, she suffered no loss or damage and the misrepresentation in obtaining the money was immaterial.

[9] ID.—BUILDING PERMIT—IMPROPER ADDRESS—RELEVANCY OF EVIDENCE.—In such prosecution, a building permit which was introduced in evidence and which disclosed that the defendant had given the prosecuting witness' address improperly thereon was relevant

---

4.  See 12 Cal. Jur. 453.

5.  See 12 Cal. Jur. 474.

6.  False pretenses where person injured might have ascertained truth by exercise of ordinary prudence, note, 40 Am. Rep. 75.

Necessity of ascertaining truth of representations, note, 7 Ann. Cas. 34. See, also, 11 R. C. L. 834; 12 Cal. Jur. 454.

7.  Acceptance of check in payment, note, 69 Am. St. Rep. 346. See, also, 21 R. C. L. 60; 20 Cal. Jur. 920.

8.  See 12 Cal. Jur. 471.

for the purpose of having the jury infer therefrom that this wrong address was given with a preconceived intent on the part of defendant to carry out the scheme which he afterwards executed, and to prevent persons furnishing labor and materials from giving notice to the prosecuting witness of their claims and thus interfering with defendant's plans for securing the payments upon the house without paying such claims.

(1) 17 C. J., p. 368, sec. 3751.    (2) 25 C. J., p. 628, sec. 61.    (3) 25 C. J., p. 609, sec. 38.    (4) 25 C. J., p. 613, sec. 43.    (5) 25 C. J., p. 651, sec. 88.    (6) 25 C. J., p. 599, sec. 26.    (7) 30 Cyc., p. 1208.    (8) 25 C. J., p. 649, sec. 86.    (9) 25 C. J., p. 650, sec. 86.

APPEAL from a judgment of the Superior Court of Alameda County. Fred V. Wood, Judge. Affirmed.

The facts are stated in the opinion of the court.

George Gelder for Appellant.

U. S. Webb, Attorney-General, and Wm. F. Cleary, Deputy Attorney-General, for Respondent.

LANGDON, P. J.—This is an appeal by the defendant from a judgment of conviction of the crime of obtaining money by false pretenses.

The outstanding facts appearing in the record are that defendant had contracted to build a home in Oakland, California, for the prosecuting witness, Mrs. Keller. The contract provided for installment payments upon the cost of the building as the work upon the same progressed, the last payment of $1,063 to be made only upon completion of the building, when the owner had accepted the same and the defendant had produced evidence that all bills and claims were fully paid. When the building was about completed, the defendant came to Mrs. Keller and asked for $700 or $800 of this last payment, all payments due prior to that time having been made. She objected to giving him this money unless she was assured that all bills were paid. Defendant told her that all bills had been paid and presented her a list of the materialmen with whom he had dealt, and told her to telephone to them and ascertain whether or not the bills had been paid. This list contained notations after each name, indicating that all were paid except the Oakland

Planing Mills, the defendant's father, who had done papering and painting upon the building, the bill for electric fixtures and one for tiling. Defendant said he wanted the $700 to pay the planing mill bill and to pay his father's bill for papering and painting. The other two items for electric work and tiling were small and would not amount to the balance due upon the property after payment of the $700. Mrs. Keller telephoned to the materialmen on the list and was informed that two of them had not been paid, although their accounts were marked paid upon the list. She took the matter up with the defendant, who stated that there was a mistake, that the two bills in dispute had been paid and he would furnish evidence of their payment. He did so by telephoning, in the presence of Mrs. Keller, to one man, and by driving her to the place of business of the second, who assured her that his bill had been paid. Mrs. Keller then gave defendant a check for $707 to pay his father and the Oakland Planing Mill. She stated that she did this because, and only because, of his assurances that all other bills had been paid except these two and the two small items for electric fixtures and tiling. Defendant assured Mrs. Keller that after the application of the $707 to outstanding bills, there would be but $140 of indebtedness against the house, while there would still be due from her to defendant about $263. After the check for $707 was given, on Saturday morning, Mrs. Keller, in thinking over the entire matter, recalled that there did not appear upon the list of materialmen the name of the person from whom defendant had purchased the rough lumber for the house. She thereupon called up the defendant and inquired where such lumber had been purchased. He told her it had been bought at the Hunter Lumber Company. She asked if the bill had been paid and he said it had been paid six weeks before. She asked if he was sure about this and he said, "Yes." She then telephoned to the lumber company, only to learn that the bill had not been paid. Mrs. Keller again called the defendant on the telephone, explaining that the lumber company denied that its bill had been paid. He insisted that there was a mistake and that the bill had been paid. Upon being asked if he had a receipt, he replied that he had lost it and had also lost the canceled check, but that he would "straighten it out." Mrs. Keller demanded

that he do so, and went to the bank and stopped payment upon her check. She then went to the defendant's home and he said he had paid the bill to a representative of the lumber company who was then out of town and that he would "straighten it out" Monday, when the man would return to town. He told her not to worry, as the lumber company had had a fire and their records were burned and they could not prove a lien upon her house. Monday morning defendant called for Mrs. Keller and took her in his automobile to the Hunter Lumber Company. He allowed her to wait in the automobile while he went to the office of the company and when he returned he presented her with a receipted bill for the lumber, which was offered in evidence. He said, "There, Mrs. Keller, I have proven my point; the Hunter Lumber Company bill has been paid. On the strength of that will you allow my check for $707 to go through?" She thereupon, in reliance upon such representation, went to the bank with defendant and canceled her direction to the bank to withhold payment upon her check, and the defendant secured the money. A little after noon of the same day the lumber company telephoned to Mrs. Keller that the defendant had given his check that morning in payment of their bill, but had stopped payment on his check and the bill was not paid, and that defendant had disappeared from his home. It appears that defendant had not sufficient funds in the bank to pay the check of the Hunter Lumber Company, which he had given in payment of the bill and he ordered payment upon it stopped, but it could not have been paid, because of the condition of his account, even without this inhibition on his part. He left town on the same day and traveled about the country until a warrant was issued for his arrest.

He contends that the information upon which he was tried and convicted does not state sufficient facts to constitute a public offense. It alleged the contract between the parties for the building of the house; that in pursuance thereof, defendant purchased lumber from the Hunter Lumber Company which was used in the construction thereof, creating an indebtedness to said company in the sum of $492; that defendant "devising and intending by unlawful ways and means and by false and fraudulent pretenses and representations to obtain and get into his custody and possession

the personal property of said Frances G. Keller, and with intent to cheat and defraud . . . said Frances G. Keller of the same, did then and there willfully, unlawfully, knowingly, designedly, falsely, fraudulently and feloniously pretend and represent to said Frances G. Keller, by then and there stating orally and in writing to the said Frances G. Keller that he . . . had paid the said indebtedness,'' and that the same was fully paid and satisfied and discharged, whereas in truth and in fact each and all of said pretenses and representations were utterly false, untrue, and fraudulent in that defendant had never paid said indebtedness or any part thereof and said indebtedness was not paid, discharged, or satisfied, but was then and there due, owing, unpaid, and unsatisfied, and each and all of said pretenses and representations made by said defendant were made for the purpose of inducing the said Frances G. Keller to pay him the sum of $707, and said defendant well knew that said pretenses and representations were utterly untrue and fraudulent, and said Frances G. Keller, then and there believing said false and fraudulent pretenses and representations and being deceived thereby was induced by said false pretenses and representations to pay him $707, and by means of said false and fraudulent pretenses the defendant obtained such money and by such means he willfully, unlawfully, falsely, fraudulently, knowingly, etc., cheated and defrauded the said Frances Keller of said sum, all to her damage, etc.

[1] Appellant urges that the information does not show that Mrs. Keller did not receive the building as agreed, and that if she did receive the building according to the contract, any misrepresentations would have been immaterial; that there is nothing in the information to show that Mrs. Keller did not owe the defendant $707 and that he was not entitled to the same; that there is nothing in the information to show that defendant did not fulfill the terms of his contract, in which event the representation would have been immaterial. None of these matters was raised at the proper time by demurrer to the information, and as they were placed beyond all possible doubt by the proof, the errors in pleading, if any, would not warrant a reversal of the judgment (*People* v. *Whiteside,* 58 Cal. App. 33 [208 Pac. 132]), since the adoption of section 4½ of article VI of our

constitution, because the entire record discloses a state of facts which demand a conviction of the defendant upon the charge set forth in the information.

[2] It is also asserted by appellant that there is a failure to allege in the information a causal connection between the false representation and the parting with the money by the prosecuting witness—that the information does not allege that said representation was the operative cause that induced Mrs. Keller to part with her money. It is alleged that "the said Frances G. Keller then and there believing said false and fraudulent pretenses and representations so made as aforesaid by the said S. J. Pearson, and being deceived thereby, was induced by said false pretenses and representations so made as aforesaid by the said S. J. Pearson then and there . . . " to pay over and deliver to defendant said sum of money. If it be conceded that this allegation of causal connection between the pretenses and the paying over of the money might well have been more definite, we nevertheless find authority for sustaining the judgment in the cases of *People* v. *Griesheimer*, 176 Cal. 44 [167 Pac. 521]; *People* v. *Lauman*, 187 Cal. 214 [201 Pac. 459]; *People* v. *Moore*, 48 Cal. App. 245 [191 Pac. 980].

[3] The argument, repeated several times in the brief of appellant, to the effect that if the prosecuting witness received what she bargained for or if the defendant was entitled to the $707 which he received from her, there was no crime committed, has no practical application to the facts of this case, for it appears in the record that the defendant was not entitled to the money he received by virtue of any contract between the parties, nor by reason of Mrs. Keller's real consent to give it to him. He received it only because he deceived her as to the facts, and was not entitled to it and would not have had it paid to him had she known the existing facts. It is also in evidence that Mrs. Keller did not receive what she bargained for. It appears from the record, including the evidence of defendant himself, that Mrs. Keller had to pay about $2,000 in bills after almost completely paying for the house to the defendant and that she was obliged to mortgage her home to pay the bills that were left outstanding against it by the defendant, who had agreed to pay them.

It is contended that the verdict violates section 1110 of the Penal Code, in that the evidence does not disclose any false token or writing. The portions of that section which are applicable here are: "Upon a trial for having, with an intent to cheat or defraud another, designedly, by any false pretense, obtained the signature of any person to a written instrument, or having obtained from any person any labor, money or property . . . the defendant cannot be convicted if the false pretense was expressed in language unaccompanied by a false token or writing . . . or unless the pretense is proven by the testimony of two witnesses, or that of one witness and corroborating circumstances. . . . "

[4] We think that the receipted bill from the Hunter Lumber Company which was used by the defendant to convince the prosecuting witness of the truth of the false pretenses was a false token or writing. The defendant obtained it by trick; it had no value nor validity under the circumstances of the purported payment, and it was used to reinforce the false pretenses and actually carried conviction to Mrs. Keller. [5] Apart from that, the record discloses a compliance with the latter portion of the above section of the Penal Code, in that the pretenses were proven by the testimony of the prosecuting witness and by corroborating circumstances. There was the positive testimony of the prosecuting witness and the corroborating circumstance that she stopped payment upon her check when she first learned that the lumber company had not been paid, which indicates strongly that this was a condition upon which the check was given. There is also the circumstance that the defendant took Mrs. Keller to the lumber company and resorted to the subterfuge which we have recited to obtain a receipted bill to present to her, which bill was introduced in evidence, and that Mrs. Keller only permitted him to cash her check after she had been presented with this receipted bill. All of these circumstances corroborate her story that she parted with her money only upon the representation by defendant that this bill had been paid by him.

[6] It is also urged that the complaining witness was in a position to ascertain whether or not the lumber company had been paid at the time the receipted bill was presented to her. The facts, as hereinbefore recited, show that Mrs. Keller exercised every precaution that a prudent person

would exercise. She appears to have made a determined effort to protect herself and her home against liens and to have gone to considerable trouble in telephoning to persons and firms who had supplied materials and in stopping payment upon her check and going to the defendant's home have gone to considerable trouble in telephoning to persons ways. But despite these efforts she was outwitted by the determined, criminal purpose of the defendant, whose resourcefulness in accomplishing his object outran all reasonable caution and care upon the part of Mrs. Keller. Furthermore, the lumber company did not know that its bill had not been paid until the afternoon of the day when the check was given to it, when the check was presented at the bank; and Mrs. Keller was notified immediately. Before that time she would only have been informed that a check had been given, and, of course, if that check had been paid by the bank, it would have constituted payment of the bill. [7] This brings us to a further contention of the appellant: that the representation made by defendant was true because the bill had been paid by check. It is settled that a check does not satisfy a debt, in the absence of a special agreement that it shall do so, until and unless it is paid by the bank upon which it is drawn. (*Comptoir D'Escompte* v. *Dresbach*, 78 Cal. 15 [20 Pac. 28] ; *Equitable Nat. Bank* v. *Griffin & Skelley*, 113 Cal. 692 [45 Pac. 985].)

[8] A further contention is made that the introduction of evidence of unpaid bills upon the building, amounting to about $2,000, was error and had a tendency to prejudice defendant in the eyes of the jury. The evidence was pertinent in the light of defendant's contention, urged again upon the appeal, that if Mrs. Keller received her home in the condition and under the circumstances called for by her contract, she suffered no loss or damage and the misrepresentation in obtaining the money was immaterial. The evidence of which complaint is made showed that Mrs. Keller did not receive what she was entitled to under the contract and that the payment of this $707 to the defendant in reliance upon his false pretenses worked a gross fraud and hardship upon her.

[9] With reference to the building permit which was introduced in evidence and which disclosed that the defendant had given Mrs. Keller's address improperly thereon,

we think it was relevant. The jury had a right to infer therefrom that this wrong address was given with a preconceived intent on the part of defendant to carry out the scheme which he afterward executed, and to prevent persons furnishing labor and materials from giving notice to Mrs. Keller of their claims and thus interfering with defendant's plans for securing the payments upon the house without paying such claims.

There are not other matters in the record that require discussion and the judgment is affirmed.

Nourse, J., and Sturtevant, J., concurred.