[Crim. No. 3189. In Bank.—July 1, 1929.]

THE PEOPLE, etc., Respondent, v. LOUIS LAZARUS et al., Appellants.

Nathan C. Coghlan for Appellants.

U. S. Webb, Attorney-General, and William F. Cleary, Deputy Attorney-General, for Respondent.

RICHARDS, J. — The defendants were convicted of murder in the first degree without recommendation by the jury and were each sentenced to suffer the extreme penalty of the law. The offense of which they were found guilty arose out of the following state of facts, which are practically undisputed: On the twenty-fifth day of July, 1928, at or about the hour of 11:40 A. M., the three defendants entered a branch bank situated on Seventh Street, in West Oakland, within which at the time there were five persons who were either officials in charge of said branch bank or were engaged in the transaction of business with it. Upon entering the bank the defendant O'Brien drew a pistol and going to a window where one Charles McFarlin was acting as teller and was engaged in a business transaction with a customer ordered McFarlin and the customer to throw up their hands. In the meantime the other two defendants exhibited weapons and gave like orders to the other employees and customers in the bank. McFarlin did not obey promptly the order of O'Brien, whereupon the defendant Lazarus fired a shot which penetrated McFarlin's head, from the effects of which he died. The three defendants immediately fled, but were presently apprehended while in flight and were positively identified as being the three men who had taken part in the attempted holdup of the bank. They were each charged with murder by an information filed by the district attorney of the county and were in due course brought to trial thereon jointly. Upon the examination of the jurors upon their

*voir dire* the trial court undertook to conduct an examination of the prospective jurors under the provisions of the recently enacted section 1078 of the Penal Code [Stats. 1927, p. 1039], and in the course of such examination to give such preliminary instructions to them as would enable them to respond intelligently to the questions touching their qualifications to be propounded to them by the court, and in the course thereof made the following statement to and inquiry of the jurors who were undergoing such examination in a body: "In all criminal cases the law is that all persons concerned in the commission of a crime are equally guilty whether they directly commit the offense or with guilty intent aid and abet it in any way. You will follow that provision of the law, won't you?" The jurors responded "Yes." A little later, while examining a particular juror, the court stated: "You heard me explain where there is an attempt to perpetrate a robbery if in the course of the perpetration of the crime a person is killed, even though accidentally, by one of those participating in the robbery they are all equally guilty under the law of the crime of murder." To this statement counsel for the defendants offered an objection which apparently was aimed at the use of the word "equally" by the court; whereupon the judge thereof restated his question as follows: "Where two or more persons are engaged in an attempt to commit robbery and as a result of that attempt one of the defendants kills an innocent person all are equally guilty of murder of the first degree." To the statement of the court as thus made, with a view apparently to conforming to the objection urged by defendants' counsel, no further objection was urged, and thereafter in the examination of such new jurors as were called to the box the court employed the latter form of statement, to which no further objection at the time was made. In its final instructions to the jury which tried the cause the court gave an instruction touching this subject which entirely clarified its meaning and intent in the use of the word "equally" in its earlier statement to the jury, and upon this particular subject the defendants offered no other or further instruction. Notwithstanding this state of the record counsel for the appellants strenuously insists that the members of the jury were prejudicially affected by the use of the word "equally" and that they and each of them gained and retained the

impression therefrom that it was the intent of the court to inform them by the use of said term that the defendants under that form of statement were to be held to the same degree of punishment in the event of being found guilty of the same degree of crime. We are entirely satisfied that no such intendment was reasonably derivable from the preliminary statement of the court to the jury in which the aforesaid term was employed, and that even had such intendment been possible it was entirely removed not only by the prompt change of statement made by the trial court, but was further obliterated by the final instruction given to the jurors, as well as by the very full and fair body of instructions which the court gave, and from which no such prejudicial injury could reasonably have resulted.

█ Counsel for the appellants urges as a further objection to the language of the court in its preliminary instructions to and inquiries made of the jurors upon their *voir dire* examination that it made frequent reference to what it stated to be the "demand" of the district attorney for the imposition of the death penalty in the event the jurors should find the defendants to be guilty of the crime of murder in the first degree. It is true that the trial court did at times refer to the attitude of the prosecution upon that subject as a "demand." But it is also true that such was the attitude and insistence of the prosecution with respect to this aggravated and indefensible crime. It is also true that no objection was urged at the time by counsel for the defendants against the use of that term by the trial judge, and we are unable to perceive how any prejudicial error could be predicated thereon or could now be available to the defendants under the fully proven circumstances of this particular case. With respect to the measure of punishment to be meted out to them by the verdict of the jury or sentence of the court the final instructions of the trial judge were eminently full and fair to these defendants, and whatever erroneous impressions the jury, or any member thereof, might have gained in the course of their *voir dire* examination we are satisfied were entirely explained and removed. █ The foregoing statement has particular application to the objection which is now urged by the appellants to the general form and course of the *voir dire* examination, but which was not presented and urged while such examination was in progress, which is

that the defendants were not afforded an adequate opportunity to conduct an examination on their own behalf of the prospective jurors. An examination of the record, however, discloses that after the trial court had conducted and completed its own inquiry into the qualifications of the jurors through a series of questions directed to them as a whole, and also through a series of particular inquiries addressed to each individual juror, counsel for defendants was offered an opportunity to examine each prospective juror as to his or her qualifications and that he took advantage of that opportunity by an examination which occupied the better part of two days and in the course of which whenever any serious question arose as to whether the juror had not been sufficiently interrogated the trial court permitted counsel for the defendants to proceed at length with his examination of the juror, and that in no instance was he unduly hampered or interfered with in the course of such examination. With respect to any other objections which the appellants now urge to the conduct of the *voir dire* examination, we do not deem them to be of sufficient importance or significance to require particular designation or treatment in this opinion.

The further objections which the appellants urge to the proceedings under the defendants' plea of "not guilty" and the trial thereon related to the instructions which were finally given by the trial court. It is urged that the court at the beginning of its charge to the jury admonished it "to pass upon and decide all questions of fact solely and entirely upon the evidence in accordance with the instructions as to the law." It is argued that by this statement at the inception of its charge the trial court undertook to invade the proper province of the jury in the course of a murder trial to determine by its general verdict both the law and the facts. We do not, however, find that the instructions of the trial court, when read as a whole, are subject to this obnoxious criticism, since the trial judge again and again instructed the jury not only that it was the exclusive province of each member thereof to pass upon the facts of the case, but that as to the law of the case the trial court was more than fair to the defendants in allowing the jury the fullest latitude in determining the extent to which they would give application of the law to the facts in their verdict. This is exemplified by the following statement of the court

to the jury: ''Gentlemen of the jury: It is my duty to state to you the law applicable to this case. It is your duty, as jurors, without any suggestion from me, to pass upon and decide all questions of fact, solely and entirely upon the evidence in accordance with these instructions as to the law. The judge of this court has nothing to do with the questions of fact, the weight of evidence, or the credit you should give to any witness sworn in this case. These are matters entirely within your province and which you, as jurors, determine for yourselves. In the charge now being given to you the judge of this court in no manner or form intends or desires you to understand that he is expressing any opinion as to the guilt or innocence of any of these defendants, or upon the weight of evidence or as to the truth or falsity of the statement of any witness in this case, or as to any inference you should draw from any of the testimony, or as to whether any fact is or is not proven.''

Notwithstanding the foregoing statement of the court at the inception of its charge to the jury it is insisted by counsel for the defendants that the effect thereof was removed by the forms of the verdict which the court submitted to the jury at the close of its instructions, one of which was the following: ''We, the jury in the above-entitled cause, find the defendant . . . guilty of felony, to-wit: murder in the first degree as charged in the indictment.'' The obnoxious phrase which appellants' counsel finds in this form of verdict is ''as charged in the indictment,'' but we are unable to discover in this phrase the evil effects or consequences which are sought to be assigned to it. It is a phrase which is almost universally in use in the forms of verdicts, and means no more than that the jury, in returning their verdict, are to render the same conformable to the particular offense and to the degree thereof with which the defendant has been charged and put upon his trial. In this, as in other respects, the instructions already given to the jury had fully clarified the duty which was about to be laid upon them in their consideration of both the form and extent of their verdict with relation to each of the defendants who was upon trial before them.

The remaining objections which we deem of sufficient importance to require particular comment relate to the case of the defendant O'Brien, who, in addition to his plea of

"not guilty," was the only one of the defendants who also tendered the plea of "not guilty by reason of insanity." It is urged on behalf of this defendant that he was entitled under his said pleas to offer upon his trial upon the first of said pleas evidence as to his mental condition prior to the commission of the offense charged as bearing upon his intent at the time of his commission of said crime. The record discloses, however, that the evidence which said defendant thus desired to offer upon his plea of "not guilty" did not in any way involve the facts and circumstances immediately attending the commission of his crime, but related wholly to mental states and their causes existing and affecting the defendant during a period long preceding the date of his crime. As to this evidence the record discloses that he was allowed the fullest opportunity to present the same upon his trial upon the plea of "not guilty by reason of insanity," and his case in that respect is thus brought directly within and is fully disposed of under the recent decisions of this court in the cases of *People* v. *Troche,* 206 Cal. 35 [273 Pac. 767], *People* v. *Leong Fook,* 206 Cal. 64 [273 Pac. 779], and *People* v. *Coen,* 205 Cal. 596 [271 Pac. 1074]. We therefore find no prejudicial error on the part of the trial court in confining said defendant with relation to such evidence to his proofs under his plea of "not guilty by reason of insanity." Neither do we find that the district attorney was prejudicially guilty of misconduct in the respects alleged upon this appeal during either the trial of the defendants jointly under their plea of "not guilty" or during the trial of the defendant O'Brien individually under his plea of "not guilty by reason of insanity."

The final contention of the appellants is the old and time-worn one that the court had no right under the law to inflict the death penalty upon defendants charged with capital crimes for the reason that the infliction of such penalty constitutes a cruel if not unusual punishment within the meaning of both the state and federal constitutions. It is not necessary to cite authorities for the purpose of showing that this contention has uniformly been held to be unmeritorious.

We have examined this record most carefully, in view of the elaborate argument of counsel for the defendants presented by both his original and supplementary briefs, and in

view also of the enormity of the defendants' alleged offense against the law. As a result of such examination we arrive at the conclusion that no prejudicial error was committed by the trial court in the course of the trial or by the jury in the form and application of their verdict of guilty without recommendation as to each and all of the defendants.

It follows that the judgment should be, and is hereby, affirmed.

Langdon, J., Curtis, J., Shenk, J., Seawell, J., and Waste, C. J., concurred.

PRESTON, J., Concurring.—I concur in this judgment but I do so solely because the evidence produced on the second hearing failed to show the existence of legal insanity. However, I am unable to come to the conclusion that a defendant may show intoxication for the purpose of reducing the degree of the crime but may not show idiocy or total insanity as a complete defense to it. It seems that on this issue of insanity we are being compelled to assume illogical and incongruous positions.

Rehearing denied.

All the Justices present concurred.