[Crim. No. 2131. First Appellate District, Division One.—March 12, 1941.]

THE PEOPLE, Respondent, v. KENNETH H. BROWN, Appellant.

Nathan C. Coghlan and J. B. Zimdars for Appellant.

Earl Warren, Attorney-General, and Dennis Hession, Deputy Attorney-General, for Respondent.

. PETERS, P. J.—Appellant, Kenneth H. Brown, and his brother, Dwight W. Brown, were jointly charged with first degree robbery and assault with intent to commit murder. Kenneth was also charged with two prior convictions, which he admitted. Both defendants pleaded not guilty, and, in addition, Kenneth pleaded not guilty by reason of insanity. The jury acquitted Dwight Brown and convicted Kenneth of both offenses charged. Kenneth thereupon withdrew the insanity plea. He appeals from the judgment and from the order denying his motion for a new trial.

The charges upon which appellant was convicted grew out of the holdup of a liquor store in San Francisco by appellant and his brother. After the holdup, in which a gun was used, appellant and his brother attempted to escape in their automobile, but were caught after a chase by a private citizen and the police. Dwight, who had no police record, admitted participation in the offense, took the stand in his own defense, and predicated his defense on the ground that when he entered the store with appellant he was under the impression that they were to buy liquor there; that both had been drinking; that there was no preconceived plan to commit a robbery; that he was dumfounded when his brother produced a pistol and told the proprietor, "This is a stick up"; that he had obeyed his brother's order to take the money from the cash register because he was afraid that his brother would shoot the proprietor or would shoot him.

Appellant, who did not take the stand, does not challenge the sufficiency of the evidence to sustain the judgment, but urges, as the sole ground for a reversal, that the trial court erroneously excluded evidence that appellant suffered from periods of unconsciousness by reason of a mental ailment. It is urged that this testimony, if admitted, would tend to prove that at the time the crimes were committed appellant was not conscious of what he was doing and, therefore, is not criminally responsible under section 26, subdivision 5, of the Penal Code. That section, in listing the persons incapable of committing crimes, includes in subdivision 5, "Persons who committed the act charged without being conscious thereof." It has been held that this section applies to somnambulists and persons suffering from fever or drugs. (*People* v. *Methever*, 132 Cal. 326 [64 Pac. 481].) Appellant urges that this subdivision should also be applicable to persons who suffer "unconsciousness" by reason of a mental ailment; that such "unconsciousness" is something different from insanity, and evidence thereof should be admitted under the plea of not guilty, and is not confined to the plea of not guilty by reason of insanity.

At various stages during the trial, counsel for appellant tried unsuccessfully to get evidence into the record as to the past mental condition of appellant. A reading of the record demonstrates that these attempts were made on behalf of Dwight Brown to support his defense under Penal Code,

section 26, subdivision 8, that he had committed the crime in fear of his life. Any error in excluding that evidence, in so far as it relates to Dwight Brown, in view of his acquittal, cannot, of course, be reviewed on this appeal. Near the conclusion of the trial counsel made an offer of proof. In this offer counsel stated that he desired to prove "by substantial evidence, by intimate acquaintances, by the family of Kenneth Brown, that during a number of years he has been suffering from a mental ailment; that that mental ailment may be and may not be insanity,—that it is only akin to it; that there is a loss of consciousness, that that loss of consciousness is not entirely periodic, that there are cessations of evidence of that loss of consciousness, sometimes running over months of time, and then there is a recurrence of not only an utter absence of memory, but of any knowledge of what he is doing." Counsel went on to state that on the night in question Dwight was accompanying his brother because he knew he was an ex-convict and that he had suffered from lapses of memory, and that he had been delegated by the family to watch over appellant. After reciting some history of the life of appellant, counsel in his offer of proof then stated, "And to get to the precise point of this proof, that when he [Dwight] heard, as he stated here on the witness stand, words indicating that there was a holdup, he turned and was dumfounded and was put in fear, because of these things that he knew concerning his brother. He knew that the life of the complaining witness was in danger, and that possibly his own life was in danger, and that is why he obeyed the commands of Kenneth Brown upon the occasion in question, and not because he had any guilty intention.

"We offer to prove that, your Honor, as we have heretofore, but we wanted to make it clear so the record is there.

"THE COURT: Well, I have allowed the defendant Dwight to testify on that, but I don't see how I can go any further on this issue. I will have to deny the motion for proof by other witnesses as to what was said and so on.

"MR. COGHLAN: This offer, your Honor, was made under—

"THE COURT: Under section 26?

"MR. COGHLAN: —under section 26 of the Penal Code.

"THE COURT: Yes, I understand. I will have to deny that motion."

A fair reading of the offer of proof, and of the questions asked various members of the family of appellant to which objections were sustained, demonstrates to a certainty, that what counsel was trying to prove was that defendant Dwight Brown knew of the past mental condition and acts of his brother, and was delegated by his family to watch over appellant, and was in fear of his life at the time of the holdup. The trial court permitted Dwight to testify to most of these facts. Whatever error may have occurred in excluding the other evidence on this point, so far as it relates to Dwight, is not involved on this appeal. Neither the offer of proof nor the questions asked of various witnesses to which objections were sustained disclosed that the proffered testimony was offered for the reason now suggested by counsel. At no time did counsel offer evidence that, at the time the crimes here involved were admittedly committed, Kenneth was not conscious of his acts. At most, all he offered to prove was that appellant, in the past, suffered from a mental ailment, without describing it, which, in the past, had rendered him "unconscious" of his acts; that he had committed various felonious acts in the past while in this condition; that Dwight knew this; that, "to get to the precise point" of the offered testimony, Dwight was in fear of his life when his brother, the appellant, ordered the proprietor of the store to put up her hands. There is no proper offer to prove that the appellant committed the crimes charged without being conscious of his acts. Even if it be assumed that, had proper testimony on this issue been offered, it would have been admissible on the guilt issue, we cannot hold, on the present state of the record, that any error was committed. If counsel desired to predicate an appeal upon error in the exclusion of evidence he was duty bound to fully and clearly state the purpose of such offered testimony to the trial court. This, he did not do. It would result in a miscarriage of justice to permit counsel to tell the trial court that testimony is offered for one purpose, and then, after the trial court has ruled, permit it to be urged on appeal that it was offered for an entirely different purpose.

█ There is another complete answer to the contentions of appellant. The offer of proof demonstrates that the proffered testimony related to an alleged subnormal mental condition of the appellant. Thus, counsel stated that he desired to prove that, in the past, appellant suffered from a "mental

ailment'' which sometimes resulted in a loss of consciousness, and that this undescribed ailment may or may not be insanity—that it is "akin" to insanity. In the offer of proof, in addition to the facts already set forth in this opinion, in reciting the background of appellant, counsel stated: "This boy Kenneth Brown has been a problem for years. Originally he was a fine boy, worked when he was a young boy of 12, 14, 15, 16 years old, turning over his wages to his family. And that there arose between him and his father an antagonism not shared by the mother against him, which resulted with the father putting him in the Ione Institution through no charges whatever, through Judge Buck of San Mateo County. The mother and the father joined in it, but the mother under compulsion from the father. That he was not even an incorrigible from the standpoint of one of his parents. And he, of course, while he was there, spent sleepless nights, months and months of sleepless nights. And escaped, didn't remember how, found himself at liberty from that institution, and that from there he went from town to town, went to Los Angeles, went to Fresno, was gathered up by the authorities in California for something that he does not remember even yet, personally, excepting by hearsay, knows nothing about the doing of it. Was incarcerated in the Colorado prison and was there thrown into that portion of the prison which is used by those that are insane, where they put the insane patients. And that while there he gave evidence of violent manifestations, and that he was accused of something there at the prison that he has no knowledge of, didn't remember, and that he protested against his guilt when the charge was made against him, whatever it was, some act of violence; and that first they put him in what they call the 'hole', the place where they put incorrigibles, and then the Warden of the institution assigned him to this portion of the prison where the insane or suspected of being insane are kept in that prison." There were several other statements of the same general tenor. Nothing can be clearer than that such proffered testimony related to the alleged diseased mental condition of the defendant. If the ailment was such that appellant was insane, then, of course, no evidence as to that fact could properly be introduced during the trial of the guilt issue under section 1026 of the Penal Code. But the rule goes even further than that. If the undescribed ailment resulted in what has sometimes been referred to as "partial insanity"

such evidence was likewise not admissible on the guilt issue. (*People* v. *Troche*, 206 Cal. 35 [273 Pac. 767].) If the offered evidence related to an alleged subnormal mental condition of appellant, it likewise was not admissible on the trial of the guilt issue. (*People* v. *Phillips*, 102 Cal. App. 705 [283 Pac. 821]; see, also, *People* v. *Lazarus*, 207 Cal. 507 [279 Pac. 145]; *People* v. *Leong Fook*, 206 Cal. 64 [273 Pac. 779].)

Whether, under the present law of this state governing the trial of criminal actions as it has been construed in the cases just cited, a defendant, at the trial of the general issue raised by his plea of not guilty, may be permitted, under subdivision 5 of section 26 of the Penal Code, as interpreted in *People* v. *Methever*, 132 Cal. 326 [64 Pac. 481], to introduce evidence for the purpose of showing that he committed the act charged without being conscious thereof, involves a point we are not called upon to consider or decide, for it is quite obvious that the testimony here sought to be introduced, at most, related to the alleged diseased mental condition of the defendant, and, therefore, was clearly inadmissible under section 1026 of the Penal Code.

The judgment and order appealed from are affirmed.

Knight, J., and Ward, J., concurred.