[Crim. No. 4618. Second Dist., Div. Two. Oct. 11, 1951.]

THE PEOPLE, Respondent, v. INSLEE CHEELEY,
Appellant.

Morris Lavine for Appellant.

Edmund G. Brown, Attorney General, and Gilbert Harelson,. Deputy Attorney General, for Respondent.

MOORE, P. J.—Having been convicted of theft on the theory of false pretenses, appellant applied for and was granted probation on specified conditions. This is an appeal from the order denying her motion for a new trial on the grounds of insufficiency of the evidence to justify conviction; errors in the admission and rejection of testimony, and in instructions given.

### Facts Established

On May 7, 1949, the Automatic Launderall Engineering Company, a corporation herein referred to as "company," was engaged in the business of installing automatic laundries in Southern California. Appellant was its executive secretary and one Watson was its sales manager. After extended negotiations, the company executed a written contract on that date with David L. Baker for the purchase and installation of 20 Launderall machines for the sum of $10,450. The machines were to be installed in the city of Burbank. The contract price was payable in installments as the construction and installation work proceeded. The final payment of $4,950 became payable when "machines are ready for delivery." The installation was to be completed within 30 days from the date of Baker's possession of the premises. Prior to the execution of the contract it developed that the capital for investment in the new enterprise was limited. Acting upon the advice of appellant, Watson advised the Bakers that if they could borrow as much as $7,200 from the bank, the $4,200 they then had would cover the remainder and provide a reasonable working capital. Appellant authorized Watson to work out the financial arrangements and to write the necessary contract. She advised Mrs. Baker that she had a warehouse full of Launderalls; that she bought them by carload lots; that she had bought the first carload of the new model LS-3 on the Pacific Coast.

As negotiations for the lease on the Burbank property commenced, Watson applied to a bank for a loan of $7,200. The bank refused to consider a loan of such amount but agreed

to lend $5,500. When the Bakers hesitated to proceed without an additional $2,000, appellant agreed that the company would carry $1,750.

Four days after the signing of the contract, appellant ordered the Ray Thomas Company, factory representative, to set aside 20 Launderalls for the company. Thereupon, the serial numbers of the 20 machines were procured and appellant entered the serial numbers on the back of the purchase order issued by the Ray Thomas Company. On May 14th the Bakers executed a "conditional sale contract," on a form prepared by the bank, with the company by appellant as secretary-treasurer. In it were included the serial numbers of the machines, the net cash selling price as $8,700; down payment of $3,200; unpaid cash balance of $5,500. Appellant assigned the conditional sale contract to the bank and received its check for $5,500 which she deposited in the account of company. Incidentally, at the time of such deposit, company's balance was $42.21. Appellant was the only person authorized to withdraw funds from the company's bank account.

On the reverse side of the conditional sale contract is a form for transferring the contract. It was executed by appellant on behalf of the company and is as follows:

"ASSIGNMENT BY DEALER WITH RECOURSE

To California Bank: For the purpose of inducing you to purchase the within contract signed by the within named Buyer, the undersigned submits the above statement which he certifies to be substantially true, and certifies that the said contract arose from the sale of the within described property, warranting to you that the down payment was made by the Buyer in cash and not its equivalent, that no part thereof was loaned directly or indirectly by the undersigned to the Buyer; *that title of the aforesaid property is vested in the undersigned free and clear of all liens and encumbrances whatsoever,*[1] except the within contract; that the Buyer was at least 21 years of age at the time of the execution of said contract; that the undersigned has the right to assign said contract; and that there is now owing thereon the amount as set forth therein.

"For value received, the undersigned does hereby sell, assign and transfer to California Bank his, its or their right, title and interest in and to the within contract and the property covered

---

[1] Italics added.

thereby and authorizes said California Bank to do every act and thing necessary to collect and discharge the same.

''All the warranties, terms and provisions of an agreement, if any, between the undersigned and California Bank are made a part hereof by reference, and upon which California Bank relies in making this purchase. Neither the repossession of the within described property from the Buyer for any cause, nor failure to file or record this contract when required by law (it being the duty of the undersigned to file or record the contract) shall release the undersigned from the obligations herein and in any such agreement between it and California Bank.

Seller, AUTOMATIC LAUNDRY ENGINEERING
Co INC.

May 14, 1949

By Inslee Cheeley''

On May 20 the Launderalls had not been delivered. Upon inquiry by the bank's representative, appellant made promises of an early delivery and finally confessed that she lacked the funds necessary to pay for the 20 machines she had ordered. Notwithstanding her statements that the machines were in the company warehouse and would soon be delivered, no delivery of any part of them was ever made and ownership of the 20 machines continued in the Ray Thomas Company. While appellant admitted that at the time she received the bank's check, the company did not have title to any Launderall machines, yet she intended that the 20 machines should be covered by the sale contract and she understood that they were to be part of the security for the loan.

PROOF IS SUFFICIENT

■ The proof of appellant's guilt is wanting in no respect. She represented in writing that her company owned the 20 Launderall machines and that there was no debt against them, while at the same time the company had not the slightest right to their possession and could not have obtained them without first paying the factory representative the purchase price agreed upon. She dispersed the $5,500 received from the bank through the company's bank account. That sum was never repaid to the bank.

Appellant contends that she cannot be guilty of theft by reason of the fact that she did not herself gain possession of the money. The authority cited in support of such contention is not the law. ■ One is guilty of theft, if as a result of his false pretenses, money or property of value is delivered to

another person for the benefit of anyone other than the rightful owner. (*People* v. *Jones*, 36 Cal.2d 373, 379 [224 P.2d 353].) The crime of thieving is not limited to the appropriation of the property of another for the thief's benefit. The unlawful appropriator is just as guilty of theft when he takes it for the benefit of a church as when he takes it for his own use. From the founding of the Mosaic law to the present time stealing has been forbidden without regard to the character of the victim or of the beneficiary of the theft. In *People* v. *Leaverton*, 107 Cal.App. 51 [289 P. 890], the conditional sales contracts for refrigerating equipment were assigned to a finance company. While the contracts were genuine, the items described in them had never been ordered from the distributor. Such proof warranted conviction of grand theft.

The facts disclosed by the record herein abundantly warranted the jury's finding that appellant never intended to make delivery of the washing machines which she contracted to sell to the Bakers.

 Appellant argues that the proof is insufficient for the reason that there was no corroboration of any statement of appellant whereby the money was obtained, citing Penal Code, section 1110.[2] The answer to this contention is first, that appellant's false pretense was her misrepresentation that the title to the 20 Launderalls was vested in the company, and second, the deceptive statement was included in appellant's assignment on the contract. Moreover, she admitted that when she signed the "Conditional Sale Contract" and the "Assignment" to the bank, the company did not have title to the 20 machines although it was contemplated that they should be included in the property to be thereby transferred.

 Appellant contends that reversible error was committed in allowing proof of Watson's conversations had with Mrs. Baker and with the bank official on the ground that they were

---

[2] Section 1110, Penal Code. "Upon a trial for having, with an intent to cheat or defraud another designedly, by any false pretense, obtained the signature of any person to a written instrument, or having obtained from any person any labor, money, or property, whether real or personal, or valuable thing, the defendant cannot be convicted if the false pretense was expressed in language unaccompanied by a false token or writing, unless the pretense, or some note or memorandum thereof is in writing, subscribed by or in the handwriting of the defendant, or unless the pretense is proven by the testimony of two witnesses, or that of one witness and corroborating circumstances; but this section does not apply to a prosecution for falsely representing or personating another, and, in such assumed character, marrying, or receiving any money or property."

hearsay. Such evidence was properly admitted. Mr. Watson was given explicit authority by appellant to act for her in making the contract with the Bakers and in making a sale of the contract to the bank. Not only did appellant authorize Watson to work out the final arrangements and to write the contracts, but she advised Mrs. Baker that she could rely upon Watson's answers as being right. Since Watson was directed to act for appellant his statements made in the course of his labors concerning the transaction were competent evidence. (*People* v. *Jones,* 61 Cal.App.2d 608, 627 [143 P.2d 726].)

Appellant contends that it was prejudicial to admit the ledger sheet of the company's bank account and to investigate the company's expenditures. The answer to such assignment is that no objection was made to the offer of such proof and that failure to object disposes of the contention. (*People* v. *Munoz,* 97 Cal.App.2d 432, 436 [218 P.2d 122]; *People* v. *Garnier,* 95 Cal.App.2d 489, 502 [213 P.2d 111]; *People* v. *Cucco,* 85 Cal.App.2d 448, 453 [193 P.2d 86].)

The assignment is made that the court prejudiced appellant by refusing the offer to prove that appellant tried to sell the Bakers' business for them to prevent their loss and to recover the $5,500 for the bank.

Having failed to state the purpose of such testimony, the court's ruling cannot now be disturbed. (*People* v. *Brown,* 43 Cal.App.2d 430, 433 [110 P.2d 1059].) But if appellant had stated the purpose of her offer, the objection would have been properly sustained for the reason that it is not a defense to a charge of theft that after the thief is caught, he attempts restoration of the stolen goods. (*People* v. *Wynn,* 44 Cal.App.2d 723, 729 [112 P.2d 979].) On the cross-examination of Mr. Jennings, the banker, he was asked whether Mrs. Cheeley stated that if the Bakers would pay the $1,950, she would install the machines. The question called for self-serving testimony which was properly excluded. But if the evidence had any virtue, she already had the benefit of it by having testified to the same matter herself.

Assignment is made of the court's instruction on theft by false pretenses as follows: ''To constitute this offense it is not necessary that the accused shall have himself or herself received the money or property involved but it is sufficient, the other elements of this offense existing, if the property is delivered to another person or to a corporation.'' That there was no error in such instruction has already been demonstrated

by the language of the Supreme Court in *People* v. *Jones,* 36 Cal.2d 373, 379 [224 P.2d 353].

Assignment is made that the following instruction was prejudicial to appellant. ''A false token is a thing or an object or document which is used as a means to defraud and which is of such character that, were it not false, it would commonly be accepted as what it obviously appears and purports to be, and which though false, is apparently what it purports to be.'' Such instruction is a substantial copy of an approved instruction. (See CALJIC, California Jury Instructions, Criminal, 229-A.) She argues that the instruction erroneously led the jury to believe that the conditional sale contract could furnish the corroboration required by section 1110, Penal Code. Whatever the court may have intended, it is certainly true that the conditional sale contract could constitute a false token or writing within the meaning of section 1110. (*People* v. *Wynn,* 44 Cal.App.2d 723, 728 [112 P.2d 979].)

Order denying motion for a new trial is affirmed.

McComb, J., concurred.

A petition for a rehearing was denied October 25, 1951, and appellant's petition for a hearing by the Supreme Court was denied November 7, 1951.