[Crim. No. 7580. Second Dist., Div. Three. May 17, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. RALPH
THOMAS ALLEN, Defendant and Appellant.

Leonard Nasatir for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Plaintiff and Respondent.

SHINN, P. J.—Appellant was accused by information of four counts of grant theft. In Count II, it was alleged that he took $750 from Fred M. Harrison on or about July 3, 1957, and in Count IV, it was alleged that he took $2,100 from Guy F. and Frances L. Gilson on or about May 31, 1957.

The cause was submitted on the testimony contained in the transcript of the proceedings had at the preliminary hearing, subject to the right to introduce further evidence, and to all legal objections by appellant. The People introduced no further evidence, appellant put on witnesses and testified in his own behalf, and in a nonjury trial was found guilty as charged in Counts II and IV, and not guilty as to Counts I and III. The court further found the allegations of four prior felony convictions to be true. Appellant now appeals from the judgment and from an order denying his motion for a new trial.

During 1957 appellant was the operator of a restaurant known as the East Side Grill. The restaurant was part of the physical plant known as the East Side Hospital and appellant was a concessionaire as to the Grill. The premises of the Grill, which was part of the hospital operation, were owned by the Allied Hospital Management Company through a holding company, as were the restaurant fixtures. Appellant apparently owned the cooking utensils, cash register, chairs, ice cream freezer, two French fryers and some silverware. In compliance with the terms of the concession agreement appel-

lant made certain replacements and improvements, including a new sink and refrigerator. All other items located on the premises, such as the stoves and coolers, were the property of the hospital company.

In July 1957, appellant approached Fred Harrison soliciting a loan of $150 with which to buy some hams cheaply. Harrison gave him $150 in exchange for a check in that amount which appellant asked Harrison to hold until after the weekend, stating that he would then have the money in the account. About a week later Harrison attempted to cash the check, but the account had been closed. At this time he discovered that the check had been postdated eight or nine days.

Shortly thereafter appellant again approached Harrison and represented that he was going to purchase an adjoining building and start a large restaurant, that he was also going to buy some sort of wagon which would haul food from one hospital to another. He displayed a letter apparently received from a hospital and asked Harrison to loan him $13,000 but Harrison stated that this was beyond his financial capabilities. Appellant then stated that he had purchased the hams but had no place to put them, that he needed a big refrigerator for this purpose. He took Harrison into the restaurant and showed him the changes he would make stating that he needed $750. He showed Harrison the cooking utensils, the stove, the place to cook the food, the coolers, dishes, refrigerator and other items located on the premises. When asked whether he owned all these fixtures and items in the restaurant appellant replied that he owned them and that he owed nothing on them. He promised to give Harrison a chattel mortgage upon the equipment and fixtures in the café. He handed Harrison what purported to be a chattel mortgage for $750. Harrison asked appellant to have his wife sign it and have it notarized, which he promised to do. Appellant took the document and brought it back the next day in an envelope. Harrison then gave appellant the $750 and took the envelope, but soon discovered that it was not executed as a mortgage, was not notarized and was not signed by appellant's wife. It described the property as "all that certain personal property situated and described as follows, to-wit: Cafe 4062 Whittier Blvd, known as Eastside Grill and any other property of undersigned without limit." Appellant immediately left the café and disappeared. Harrison

endeavored to overtake him but did not see him again until they were in court. No part of the $750 has been repaid. Harrison testified that he believed and relied upon appellant's representations in making the loan.

Although the evidence of ownership of the personal property was vague it was sufficient to show that Allen did not own all the articles of equipment in the café. A substantial part of them belonged to the hospital company. After Allen decamped, the hospital company had to pay the balance owed on the equipment. Shortly after the Harrison transaction appellant left the state and was absent for the greater part of three years. On the stand appellant admitted he was largely in debt and owed money on a substantial number of the articles in the café. His representations with respect to arrangements that were being made to greatly expand his business were shown to be false. His representation that he was handing Harrison a duly executed and acknowledged chattel mortgage was false. In his statements to the police he acknowledged that he ''just walked away because of poor business conditions.'' It is clear from his conduct and his further actions to be related that appellant intended to obtain as much money as possible in any way that was possible and to leave the state.

Although appellant did not give Harrison a note for $750 the face of the chattel mortgage contained what purported to be a copy of a note in that amount. Subscribed to this purported copy was the name of appellant and also the name of the café. The document bore no other signature and hence was not executed as a mortgage. Aside from the fact that the document was not executed by the signature of appellant it was not acknowledged or certified, which was necessary if it was to be recorded. Without acknowledgment or proof and certification it failed to meet the requirements of section 2957 of the Civil Code in order to be valid as against the creditors of appellant and purchasers or encumbrancers of the property in good faith and for value. The purported chattel mortgage was a false token or writing which accompanied the false pretenses and was therefore sufficient to supply the corroboration which is necessary under section 1110 of the Penal Code in a prosecution for obtaining money by false pretenses. (*People* v. *Pearson,* 69 Cal.App. 524, 531 [231 P. 612]; *People* v. *Cheeley,* 106 Cal.App.2d 748 [236 P.2d 22]; *People* v. *Payton,* 36 Cal.App.2d 41 [96 P.2d 991]; *People* v. *Wynn,* 44 Cal.App.2d 723 [112 P.2d 979].)

Further, the evidence of similar false representations made to other victims of appellant furnishes additional legal corroboration. (*People* v. *Weitz,* 42 Cal.2d 338 [267 P.2d 295]; *People* v. *Carlin,* 178 Cal.App.2d 705 [3 Cal.Rptr. 301]; *People* v. *Frankfort,* 114 Cal.App.2d 680 [251 P.2d 401].)

 In proof of Count IV, which consisted of taking $2,100 from Mr. and Mrs. Gilson, the People produced evidence that appellant made representations to the Gilsons similar to those subsequently made to Harrison. Among these was the representation that he was planning a building on Pomona Boulevard close to the Bella Vista Hospital and that he would operate a new restaurant there. The Gilsons knew a restaurant at that location was then in process of construction and believed it to be the one appellant referred to. Appellant also represented that the café which he operated was about to be enlarged by the hospital and that he, appellant, would supply other hospitals with food. He promised the Gilsons that if they would lend him the money he needed they would share in the profits of the largely extended business. The Gilsons believed and relied upon appellant's representations. They loaned appellant $2,100 and received in return a promissory note for the amount, together with a chattel mortgage upon 60 shares of stock of Standard Oil Company of California, which was then in appellant's possession.

The complaint upon which the preliminary hearing was held charged two offenses of grand theft, in addition to the Harrison and Gilson counts. Count I accused Allen of obtaining $1,500 from a Dr. Thurmond by false representation. In this transaction, which preceded the Gilson transaction, Allen gave Dr. Thurmond a chattel mortgage, dated April 9, 1957, on 60 shares of stock of Standard Oil Company of California. None of the money was repaid; the chattel mortgage was not discharged. Allen had no more than 60 shares of the stock, which he mortgaged to both Dr. Thurmond and the Gilsons. When it was stipulated that the court should consider the evidence contained in the preliminary transcript no exception was made of the testimony relative to the transaction with Dr. Thurmond.

Although the testimony of Mrs. Gilson was vague it was sufficient to prove that she and her husband had been grossly deceived. She was the only witness to testify to appellant's representations. So far as shown by the evidence the chattel mortgage appellant gave the Gilsons was valid on its face.

However, as pointed out above, the stock had already been mortgaged to Dr. Thurmond. Although appellant testified that he acted in good faith in his dealings with the Gilsons, his credibility was impeached by the fact that he had suffered four previous felony convictions of grand theft. From the evidence the trial court could properly infer that appellant had no intention of performing the promises made to the Gilsons. ■ Such unconditional promises, made without any intention of performing them, constitute actionable fraud. (*People* v. *Frankfort, supra,* 114 Cal.App.2d 680, 698; *People* v. *Chamberlain,* 96 Cal.App.2d 178, 182 [214 P.2d 600]; *People* v. *Mason,* 86 Cal.App.2d 445, 449 [195 P.2d 60].) ■ As we have noted above, the corroboration required by Penal Code, section 1110, is furnished by the evidence of similar false representations made by appellant to other victims, including Harrison. (*People* v. *Weitz, supra,* 42 Cal.2d 338; *People* v. *Carlin, supra,* 178 Cal.App.2d 705; *People* v. *Frankfort, supra,* 114 Cal.App.2d 680.)

The judgment and the order denying motion for a new trial are affirmed.

Ford, J., and Files, J., concurred.