[Crim. No. 6004.   In Bank.   June 21, 1957.]

THE PEOPLE, Respondent, v. DONALD KEITH BASHOR, Appellant.

Terrence W. Cooney, under appointment by the Supreme Court, for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

GIBSON, C. J.—Defendant was indicted on two counts of murder and two of burglary. He initially entered pleas of not guilty and not guilty by reason of insanity but later pleaded guilty to all counts. A jury trial was waived by defendant, and evidence was received for the purpose of determining the issue of sanity, the degree of the offenses and the penalty to be imposed. The court found that all of the offenses were of the first degree and that the defendant was sane at the time they were committed. Defendant's motion for a new trial was denied, and he was sentenced to death on each of the murder counts. This appeal comes before us automatically. (Pen. Code, § 1239, subd. (b).)

On the night of February 18, 1955, an apartment occupied by three women at 215 South Carondelet Street in Los Angeles was entered while they slept, and the sum of $87 was taken from their purses. On the same night, in an apartment at 271 South Carondelet, Karil Graham was beaten to death. The contents of her purse were found scattered on the floor when her body was discovered, and drawers in the kitchen and living room were open. In the opinion of the doctor who performed an autopsy, the multiple head injuries which the victim suffered were caused by repeated blows with a hard object which could have been a piece of lead pipe.

In May of 1956, Laura Lindsay was slain in her home, which was located about two blocks from the site of the previous killing. Her body, which was found at 8:30 a. m., was partially clothed, and there were various articles strewn over the floor. A palm print was discovered on a firewood box which was open, permitting entry from outside, and it was subsequently determined that the print was made by defendant. An autopsy surgeon found that the victim had sustained several head wounds which, in his opinion, could have been produced by a ball peen hammer.

About two weeks later, the apartment of Lester Olson was entered at night, and his wallet, which contained a $50 bill and other money, was taken while he slept. Shortly after 2 a. m. on that night, two police officers on "stake-out duty" in the vicinity of Olson's apartment saw defendant, who was barefooted and was wearing gloves, standing in the courtyard of an apartment house. Defendant was arrested, and a considerable amount of money was found on his person, including a $50 bill.

In response to questioning by the police, defendant, who at first claimed to be innocent, confessed that he had committed

all of the crimes described above. He admitted that the two burglaries were committed in the nighttime and that he was armed with a piece of lead pipe when he entered the apartment at 215 South Carondelet Street. With respect to the killing of Karil Graham, defendant said that he entered the apartment through an unlocked door, and the victim who was sleeping awoke and screamed while he was looking for her purse. Defendant took a piece of lead pipe from his pocket and struck her on the head, and, when she continued to scream, he struck her several more times until she was quiet. He found her purse after a further search and took $20 from it. In confessing the killing of Laura Lindsay, defendant stated that, armed with a ball peen hammer, he entered her home at night through the wood storage box in the living room. He walked through the house, looking for a purse or a wallet, and came to the bedroom, where he saw a woman lying on the bed. When she awoke and started to rise, he took the hammer from his pocket and struck her on the head. She "didn't go down immediately," and he struck her several more times. She followed him across the room and fell after a struggle in which a table was knocked down. Continuing his search, defendant found a purse from which he removed $25. Before leaving, he washed his hands in the bathroom and wiped the faucets with a towel.

Four psychiatrists who were appointed by the court familiarized themselves with the circumstances of the crimes and examined defendant. They testified that, in their opinion, he was sane when the offenses were committed.

The evidence is clearly sufficient to support the judgment.

■ Defendant argues that, without his confession, the record would not support the findings of first degree murder and that his confession was inadmissible because it was made four days after his arrest, at a time when he had not been brought before a magistrate. A confession obtained during a period of illegal detention is admissible if voluntarily made (*Rogers* v. *Superior Court*, 46 Cal.2d 3, 10 [291 P.2d 921]), and there is no dispute that, as was established by uncontradicted evidence at the trial, defendant's confession was free and voluntary.

■ There is no merit in defendant's argument that imposition of the death penalty in a case of first degree murder violates the constitutional provisions prohibiting cruel and unusual punishment. (*People* v. *Lazarus*, 207 Cal. 507, 514-

515 [279 P. 145]; *cf. In re Wells,* 35 Cal.2d 889, 895 [221 P.2d 947].)

The judgment and the order denying a new trial are affirmed.

Shenk, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.

CARTER, J.—I concur in the judgment of affirmance.

While I unequivocally adhere to the salutary principles stated in my dissenting opinion in *Rogers* v. *Superior Court,* 46 Cal.2d 3, 11 [291 P.2d 921], in view of the uncontradicted evidence as disclosed by the record in this case that the confession which was obtained from defendant during a period of illegal detention was freely and voluntarily given and that no coercion was exerted on defendant by the prosecuting officers, I am of the opinion that the admission of the confession did not constitute prejudicial error.