Fuld, J.
This is the first appeal to come back to this court following its remand for a Huntley hearing. (See People v. Huntley, 15 N Y 2d 72.)
In 1964, following our affirmance of the defendant’s conviction and sentence of death for felony murder (13 N Y 2d 842, rearg. den. 13 N Y 2d 988), the Supreme Court of the United States vacated the judgment and remanded the case “ for further proceedings not inconsistent with [its] opinion * * * in Jackson v. Denno [378 U. S.], p. 368.” (Catanzaro v. New York, 378 U. S. 573.) In compliance with that mandate, we *188 “ withheld ” determination of the appeal and “ remitted ” the case to the trial court for a hearing on the voluntariness of the defendant’s inculpatory statements (15 N Y 2d 722).
• The trial judge has ruled that the statements were voluntary and, from that determination, the defendant properly appeals directly to this court as of right in view of the fact that his original sentence, though later commuted to life imprisonment, was of death. (Code Crim. Pro., § 517, subd. 1; see People v. Brabson, 9 N Y 2d 173.)
Catanzaro was indicted with three others for the holdup killing of a United Parcel truckdriver on May 17, 1961, on 53rd Street near Second Avenue in New York City. As a result of thorough police investigation, the defendant was discovered to be staying in a certain hotel and detectives went there to apprehend him. The defendant having gone out, the detectives awaited his return; two of them were let into the room by the hotel clerk, while a third remained in the lobby. The defendant arrived at about one o’clock in the morning, carrying a package under his left arm. Spotted by the officer in the lobby, he was followed upstairs and accosted in front of the door to his room. The door opened and one of the detectives inside the room, observing the defendant 1 ‘ reaching for the package ” under his arm, dashed from the room and grabbed him. During the ensuing struggle, in which considerable force was required to subdue the defendant, the package was torn open to reveal a loaded gun. One of the officers yelled, “ I have the gun. I have the murder weapon.” The defendant reacted to this by blurting out, “ No, no, I was only driving the car. I didn’t do it. I didn’t do it. The kid did it ”. In a further effort to exculpate himself, the defendant also stated that the murder weapon was “a .22 ” and that it was ‘ ‘ the kid ’ ’ who had used it. The defendant was told that, if he did not co-operate, he would probably “be stuck with this whole thing”; they “will throw the book at you * * * [and] see that you get life or the chair ”. • He thereupon disclosed the names of his partners' in crime and declared that the gun used to effect the killing had been thrown into the East River. Some time later, he gave a full statement, incriminating himself, to an assistant district attorney.
*189 Although Catanzaro had not taken the stand at his trial, he did testify- at the- Huntley hearing. It was his claim that the police beat him and threatened his life both at the time of his arrest and during subsequent questioning at the station house. He had confessed to the assistant district attorney only because he “ thought any second [one of the police officers] was going to kill [him] right in the room there. ” The trial judge, however, found the defendant’s statements to be “voluntary beyond a reasonable doubt” and further held that the defendant had, contrary to his testimony, never requested to see or consult with an attorney.
As the law now stands, the failure to advise the defendant upon his arrest of his right to counsel or of his right to remain silent does not invalidate his inculpatory statements, and the People are free to introduce them at the trial (see People v. Dusablon, 16 N Y 2d 9, 19; People v. Gunner, 15 N Y 2d 226, 232-233) if voluntariness is established “ beyond a reasonable doubt.” (See People v. Huntley, 15 N Y 2d 72, 78, supra.)
The proof is more than sufficient to support the finding below that the defendant’s admissions, both those uttered spontaneously when he was being subdued and taken into custody and those made at the police precinct, were voluntary and not the product of force or fear. In effecting the arrest, the police Avere privileged to use necessary force (Penal Law, § 246, subd. 1; Code Crim. Pro., § 174; see People v. Denker, 225 App. Div. 517), particularly AAdien they had reason to believe that the defendant had participated in a killing and Avas probably armed. The evidence supports the conclusion that they used no more force in the brief struggle than was necessary to subdue him and there is no record that he suffered any injuries.
Although the issue is one of first impression in this State, courts of other jurisdictions have held that the use of reasonable force in subduing a defendant or in effecting his arrest does not impair the voluntariness of a statement made by him during his subjugation or render such statement inadmissible. (See, e.g., People v. Burwell, 44 Cal. 2d 16, 30-31, cert. den. 349 U. S. 936; Anderson v. State, 133 Wis, 601.) Confessions which are involuntary are inadmissible “ not because [they] are unlikely to be true but because the methods used to extract them *190 offend an underlying principle in the enforcement of our criminal law ” and violate procedural standards of due process. (Rogers v. Richmond, 365 U. S. 534, 540-541; see Spano v. New York, 360 U. S. 315, 320-321; Blackburn v. Alabama, 361 U. S. 199; Watts v. Indiana, 338 U. S. 49, 54.)
In the case before us, no impermissible methods were used nor was there any violation of due process. Indeed, there was not even a causal connection between the defendant’s admissions and the force properly employed to apprehend him. Prompted by the statement that the gun taken from him was “ the murder weapon ”, he pointed the finger at someone else in an attempt to minimize his connection with the killing. Quite obviously, his remarks were unrelated to police violence and meant to be exculpatory rather than inculpatory—as, indeed, they would have been were it not for the felony murder rule. The fact that the officer was mistaken in his identification of the gun as the murder weapon does not affect the voluntariness of the defendant’s response. (See, e.g., People v. Caserino, 16 N Y 2d 255, 259; People v. Everett, 10 N Y 2d 500, 507.)
Nor does the use of force to accomplish the defendant’s arrest taint the incriminating statements which were subsequently given to the police and the district attorney at the station house. (See, e.g., Roman v. State, 23 Ariz. 67, 76-78; People v. Carter, 56 Cal. 2d 549, 561-562; State v. Hart, 292 Mo. 74.) Indeed, the employment of even unlawful coercion at one point in time does not necessarily mean that a confession later given was the fruit or product of such coercion. (See Stroble v. California, 343 U. S. 181, 190-191; United States v. Bayer, 331 U. S. 532, 540-541.)
The trial court was privileged to believe the testimony of the police and the district attorney that, once the defendant had been secured in custody, he was well treated. There is evidence in the record that he was given coffee, food and cigarettes at the station house; that he was questioned in normal conversational tones, no voices raised, no threats or violence offered; that he appeared to be neither ill nor frightened; and that, when he was turned over to the Department of Correction, his physical condition was recorded as " O.K.” The picture developed was of a defendant anxious to confess, eager to “ co-operate,” in order to get a “ break ”. With such a record before him, the *191 trial judge was thoroughly warranted in finding, beyond a reasonable doubt, that the defendant’s admissions, both at the time of his arrest and at the station house, were voluntary and unaffected by the force attendant upon his arrest.
It is only necessary to add that we have considered all of the other contentions previously advanced by Catanzaro’s able assigned counsel upon the argument of his appeal in chief (13 N Y 2d 842) and find them without merit.
The judgment, as amended following the Huntley hearing, should be affirmed.
Chief Judge Desmond and Judges Van Vooehis, Bubke, Scileppi, Bebgan and Keating concur.
Judgment affirmed.