[Crim. No. 16711. In Bank. Feb. 14, 1974.]

In re ERWIN M. WALKER on Habeas Corpus.

766

768

**COUNSEL**

Evelle J. Younger, Attorney General, Herbert L. Ashby and Edward A. Hinz, Jr., Chief Assistant Attorneys General, William E. James, Doris H. Maier and Edward P. O'Brien, Assistant Attorneys General, and Gloria F. DeHart, Deputy Attorney General, for Appellant.

Atherton Phleger and Brobeck, Phleger & Harrison for Respondent.

Peter J. Donnici, John J. Grey, Charles C. Marson, Joseph Remcho, Peter E. Sheehan and Larry Sleizer as Amici Curiae on behalf of Respondent.

**OPINION**

**BURKE, J.**—The People appeal from an order granting a writ of habeas corpus which, in its effect, sets aside petitioner Erwin M. Walker's 1947 convictions on one count of first degree murder and two counts of attempted murder. (See Pen. Code, § 1506.) For the reasons hereinafter stated we have concluded that the order must be reversed but that petitioner's sentence of life imprisonment *without possibility of parole* for the murder should be modified by the deletion of the italicized words. Since

several claims were not reached by the Solano County Superior Court, the case is remanded to that court for consideration of those claims.

*Background Facts*

In 1947 an indictment was filed charging petitioner with one count of murder and two counts of attempted murder. While represented by counsel, petitioner entered the single plea of not guilty by reason of insanity, thereby admitting "the offense[s] charged" (see Pen. Code, § 1016). He waived a jury and was found by the Los Angeles Superior Court to have been sane at the time of the crimes. In petitioner's presence his counsel stipulated that the evidence at the sanity trial could be used to determine the degree of, and punishment for, the murder, and no additional evidence was presented on those issues. The court found the murder was first degree and fixed the penalty at death.

On petitioner's appeal this court affirmed the murder conviction and death penalty in 1948 (*People* v. *Walker,* 33 Cal.2d 250 [201 P.2d 6]), and certiorari was denied in 1949 (336 U.S. 940 [93 L.Ed. 1098, 69 S.Ct. 744]). The attempted murder convictions were not appealed and became final in 1947.

Following his prison arrival in 1947, petitioner was found by a psychiatrist to be a paranoid schizophrenic. In April 1949, on the date set for petitioner's execution, psychiatrists found him to be insane, and his execution was stayed. The next month he was adjudicated insane and was committed to a mental hospital, where he underwent electric shock treatments.

In 1961 another sanity hearing was held, and he was adjudicated sane. That same year the Governor commuted petitioner's death sentence to life imprisonment without possibility of parole.

In 1970 petitioner filed a habeas corpus petition in this court, and it was denied without a hearing. Thereafter he filed a similar petition in the Solano County Superior Court seeking relief on the grounds that:

(1) Incriminating statements he made to the police were involuntary, and these statements were improperly introduced into evidence and "used . . . to force his plea";

(2) His statements to court-appointed psychiatrists were erroneously admitted;

(3) The procedure followed in determining the dgeree of, and penalty for, the murder was invalid;

(4) He was not afforded effective assistance of counsel (a) at trial and (b) on appeal;

(5) He was denied due process for specified reasons relating to the *Wells-Gorshen* rule;

(6) The Los Angeles Superior Court erred in not ordering a Penal Code section 1368 sanity hearing; and he was incompetent both at the time of (a) the trial and (b) the appeal.

Subsequently during this proceeding the following additional issue was raised:

(7) Whether the decision in *People* v. *Anderson* (1972) 6 Cal.3d 628 [100 Cal.Rptr. 152, 493 P.2d 880], affects petitioner's case.[1]

The Solano County Superior Court issued an order to show cause. Thereafter a return was filed alleging that petitioner was confined pursuant to the lawful order of commitment of the Los Angeles Superior Court and that his restraint was not unconstitutional. According to remarks by defense counsel, it was stipulated that the petition be considered a "reply" to the return.

Following an evidentiary hearing, which was devoted in large part to psychiatric testimony regarding petitioner's mental condition at various times, the Solano County Superior Court ruled in petitioner's favor on grounds (1) through (4); the court did not decide the remaining issues. The writ was granted, and this appeal is from that order. (In 1972 petitioner was released on bail pending the appeal.)

The evidence at the 1947 trial is summarized in *People* v. *Walker, supra,* 33 Cal.2d 250, and need not be set forth here in detail. It appears in brief: Petitioner entered the military service in 1941 and was sent to the South Pacific where he was assigned to a group engaged in radar repair in advance invasion areas. Upon his return to the United States in 1945 he began a

---

[1]Also an amicus curiae brief has been filed asserting that petitioner's sentence of life imprisonment without possibility of parole is cruel and/or unusual punishment (U.S. Const., 8th & 14th Amends.; Cal. Const., art. I, § 6), and denies him equal protection of the laws (U.S. Const., 14th Amend.; Cal. Const., art. I, §§ 11 & 21) and that the "without possibility of parole" condition is invalid because the state constitutional provision relating to the Governor's commutation power (see former art. VII, § 1, Cal. Const.), properly interpreted, required that a condition placed on commutation be reasonable and judged by contemporary standards, the condition on petitioner's sentence is unreasonable. It is unnecessary to reach these assertions since, as we shall see, under *People* v. *Anderson, supra,* 6 Cal.3d 628, petitioner's sentence should be modified by the deletion of the "without possibility of parole" restriction on his sentence.

series of burglaries. In April 1946 an attempted sale of equipment taken in one of the burglaries gave the police a clue to his identity. Officers Forbes and Johnson attempted to arrest petitioner, but he shot his way out, thus committing the attempted murders with which he was charged. In June 1946 he shot and killed Officer Roosevelt during an attempt to perpetrate a burglary of a market. After the murder he committed other crimes, including a series of robberies, and was eventually arrested in December 1946.

*People* v. *Walker, supra,* 33 Cal.2d 250, 255, states "Whether [petitioner] embarked on his career of crime with an idea of making society support him and pay for his suffering, or whether he did it, as he claims, under an aberration, was an issue for the trial court," and this court (*id.,* at p. 257) concluded that the evidence supported the trial court's finding of sanity.

### 1. *Petitioner's Allegedly Involuntary Statements to the Police*

The petition alleged that incriminating statements petitioner made to the police were involuntary and that these statements were erroneously introduced into evidence at his sanity trial and "used . . . to force his plea." At petitioner's trial no objection was made to the admission of the statements on the ground that they were involuntary, and no argument was made on appeal that the statements were involuntary. (*People* v. *Walker, supra,* 33 Cal.2d 250, 259.) So far as appears the matter was raised for the first time in 1970 in the habeas corpus petition that we denied, and it was raised again in the instant proceeding.

The general rule is that "habeas corpus cannot serve as a substitute for appeal, and, in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction." (*In re Dixon,* 41 Cal.2d 756, 759 [264 P.2d 513]; in accord *People* v. *Morrison,* 4 Cal.3d 442, 443, fn. 1 [93 Cal.Rptr. 751, 482 P.2d 663]; *In re Black,* 66 Cal.2d 881, 886-887 [59 Cal.Rptr. 429, 428 P.2d 293]; *In re Shipp,* 62 Cal.2d 547, 551-553 [43 Cal.Rptr. 3, 399 P.2d 571].) Here petitioner sought to excuse the failure to raise the above matter on appeal by alleging, inter alia, that he was then "incompetent." The Solano County Superior Court made no express finding with respect to that allegation, nor does it appear that such a finding can be implied. That court declared that "The contention that [petitioner] was incompetent throughout the entire proceeding does not

now require a decision," and it would be unreasonable to assume that the court decided whether petitioner was incompetent at the time of his appeal.

■ It is also the rule that "a convicted defendant must fully disclose his reasons for delaying in the presentation of" the facts upon which he would have a final judgment overturned. (*In re Wells,* 67 Cal.2d 873, 875 [64 Cal.Rptr. 317, 434 P.2d 613]; *In re Shipp, supra,* 62 Cal.2d 547, 553; *In re Swain,* 34 Cal.2d 300, 304 [209 P.2d 793].) The People argue that petitioner failed to satisfactorily explain the long delay in seeking relief. Petitioner asserts, and the People do not deny, that the matter of the delay was not argued in the court below. The petition for habeas corpus sought to explain the delay by alleging, inter alia, that petitioner was insane from 1944 to 1961, had no counsel following his appeal until the instant proceeding, and was without knowledge of the law. The Solano County Superior Court made no express findings on these matters, nor does it appear that such findings can be implied.

Even if we assume that special circumstances excused petitioner's failure to employ his remedy of appeal and that there is an adequate excuse for his delay in the presentation of the facts upon which he seeks to have his conviction overturned, as we shall see, his claim that his statements to the police were involuntary is not supportable on this appeal.

In its order granting habeas corpus the Solano County Superior Court stated in part that "The combination of circumstances *revealed by the testimony of the police* [at the murder trial] clearly point to the involuntary character of [petitioner's] incriminating statements." (Italics added.)

The evidence of the circumstances surrounding petitioner's statements as revealed by the testimony of the police, may be summarized as follows:

Officers Donahue and Wynn testified: Around 2 a.m. on December 20, 1946, accompanied by Officers Rombeau, Baughn and Hannon, they went to the petitioner's apartment. They had a key to the apartment, and when they put it in the door they heard someone moving inside. As the door opened,[2] Donahue saw a submachine gun in petitioner's hand. Donahue jumped on petitioner, and they fell to the floor. A struggle ensued in an attempt to get petitioner's gun. During the struggle Wynn struck petitioner twice on the head with a gun butt. Neither blow seemed to bother petitioner, who was still grasping his gun and trying to twist it. Wynn then shot petitioner twice, and petitioner was hit in the shoulder. Donahue and Rombeau held petitioner's arms, and Wynn held petitioner's shoulders. As

---

[2]Petitioner did not allege in the habeas corpus petition, nor does he now claim, that the police entry was unlawful.

they rolled him over, he said, "All right, now, you have me. Do a good job." Donahue asked petitioner "Why did you kill the Highway Patrolman?" and petitioner replied "he had to." When asked "Did you shoot the two officers in Hollywood?" petitioner answered "Yes." The officers saw that petitioner was bleeding badly and attempted to make him comfortable by covering him and putting a pillow under his head. Petitioner never became unconscious. The officers called an ambulance, which arrived in less than 10 minutes. During this period petitioner voluntarily told the officers the location of various guns, in addition to loaded weapons the officers found in his apartment.

Officer Rombeau testified: He accompanied petitioner to the hospital in the ambulance, and petitioner appeared rational. Rombeau asked about the crimes in question and petitioner said he had nothing to say. Rombeau further testified: "I said, 'It looks to me like you are in pretty bad, shape and I think the smart . . . thing to do is to . . . tell us all about it, so that the issue will be closed if something serious happens, you are in pretty bad shape, you may not live until you get to the hospital.' [Petitioner] said 'I have nothing to say.' Later on, as we arrived at the . . . hospital, while on the table being examined by the . . . physician, he asked for some opiates. He said he was in pain and he wanted something to kill the pain. I again asked him if he wouldn't relate all the circumstances regarding the killing of . . . Roosevelt and the shooting of our two Hollywood detectives. I said 'Now is your time, because you may not come out of this and you should clear it up.' 'Well,' he said, 'all right, it looks like there is nothing else to do, so I will tell you.' At that time he went in detail telling just how he shot . . . Forbes and Johnson and . . . how he had killed . . . Roosevelt."

Officer Wynn testified that on the morning of December 21, 1946, he talked with petitioner for about an hour at the hospital, after which a stenographic reporter named Bechtel came and the conversation was repeated and transcribed. A doctor and nurse were also then present. Petitioner told them "very freely about where this was [and] that was." Bechtel testified to the contents of the conversation. In the conversation petitioner made statements indicating that he murdered Officer Roosevelt during an attempt to commit a burglary; petitioner also admitted having committed the attempted murders and various robberies and burglaries, and said that his statements were freely and voluntarily made.

Officer Wynn further testified: On December 23, 1946, Wynn talked with petitioner again at the hospital, and petitioner made described admissions.

Officer Forbes testified that around December 28, 1946, he talked with petitioner at the hospital, and petitioner made various admissions to him.

Officer Wynn further testified: On December 30, 1946, Wynn was told that petitioner was ready to be transferred from the hospital to jail. Petitioner "kept asking [Wynn] for opiates" and asked him to get some from the doctor. Wynn tried to do so, but the doctor said "No." Petitioner said he was "a little weak" but did not complain about any discomfort. En route to jail Wynn and petitioner talked. Wynn said he would like to take movies of a reenactment of the killing of Roosevelt and asked if petitioner had any objection, and petitioner said he would like to contact his attorney first and gave Wynn attorney Girard's card. Wynn tried unsuccessfully to reach Girard. Wynn then asked if petitioner had any objection to going to Griffith Park and Soledad Canyon to recover articles there that petitioner had mentioned and petitioner replied "he didn't see anything wrong in that." Wynn, petitioner, and several officers proceeded to those locations and recovered specified objects. During this period petitioner made further incriminating statements. At one point petitioner complained of being cold, and the officer thereupon placed his overcoat around petitioner.

The record further shows that at the time of the arrest petitioner was about 28. He had one year of college and was well above average in intelligence. He testified at length at the trial and made no claim that any of his statements was involuntary.[3]

The admissibility of petitioner's statements "as a constitutional matter was governed . . . by the contemporary case law elaborating the due process standards of voluntariness." (*Procunier* v. *Atchley,* 400 U.S. 446, 453 [27 L.Ed.2d 524, 530, 91 S.Ct. 485].)[4] ▆ "A confession is involuntary unless it is 'the product of a rational intellect and a free will.' "

---

[3]At the trial petitioner testified that when he made the statement on December 21, he was "drugged . . . with codine [*sic*] and in . . . pain" but that he was "rational." He thereafter stated that he was "confused mentally, fuzzy" when he made the December 21 statement but admitted giving a detailed description at that time regarding the preparation of nitroglycerine. Subsequently upon being asked "When you were questioned by the officers in the hospital after you were shot were you clear in your mind then?" he replied "I believe I was, yes, as a whole." He was also asked by defense counsel "And at all times you even went out of your way to assist the officers with respect to the various incidents and . . . transactions involved, isn't that true?" and he replied "Yes, I divulged much which they had no knowledge of; I cooperated in every way I could."

[4]As petitioner recognizes, the rules in *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], *Escobedo* v. *Illinois,* 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], and *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], are inapplicable here since he was tried and the judgment be-

(*In re Cameron,* 68 Cal.2d 487, 498 [67 Cal.Rptr. 529, 439 P.2d 633], quoting *Blackburn* v. *Alabama,* 361 U.S. 199, 208 [4 L.Ed.2d 242, 249, 80 S.Ct. 274].) In determining whether a confession is the product of a rational intellect and a free will, the totality of the circumstances surrounding the confession must be taken into account. (*Reck* v. *Pate,* 367 U.S. 433, 440 [6 L.Ed.2d 948, 953, 81 S.Ct. 1541]; *People* v. *Sanchez,* 70 Cal.2d 562, 572 [75 Cal.Rptr. 642, 451 P.2d 74].)

■ The use of reasonable force in arresting a defendant does not impair the voluntariness of a statement made by him during or after the arrest (see, e.g., *People* v. *Carter,* 56 Cal.2d 549, 561-562 [15 Cal.Rptr. 645, 364 P.2d 477]; *People* v. *Burwell,* 44 Cal.2d 16, 30-31 [279 P.2d 744] [cert. den., 349 U.S. 936 (99 L.Ed. 1265, 76 S.Ct. 788)]; *People* v. *Hill,* 17 N.Y.2d 185 [269 N.Y.S.2d 422, 216 N.E.2d 588, 591] [cert. den., 383 U.S. 960 (16 L.Ed.2d 303, 86 S.Ct. 1231), 385 U.S. 875 (17 L.Ed.2d 102, 87 S.Ct. 152)]; 29 Am.Jur.2d, p. 627), and here it does not appear from the officers' testimony that the force employed in arresting petitioner was unreasonable.[5]

■ Although petitioner sustained injuries at the time of his arrest and undoubtedly was in pain during some of the interviews, such pain does not appear from the officers' testimony to have reflected on his competency. (See *People* v. *Cobb,* 45 Cal.2d 158, 162 [287 P.2d 752]; *People* v. *Burwell, supra,* 44 Cal.2d 16, 30-31 [cert. den., 349 U.S. 936]; *People* v. *Amaya,* 40 Cal.2d 70, 77 [251 P.2d 324]; 29 Am.Jur.2d, Evidence, § 575.)

As heretofore appears, en route to the hospital Officer Rombeau made a statement to petitioner indicating that petitioner was "in pretty bad shape" and might not live until he reached the hospital and that "the smart . . . thing" to do was to tell the police "about it" so that the issue would be closed if something happened. ■ Even assuming Rombeau's statements regarding petitioner's condition constituted deception, this did not render petitioner's subsequent admissions inadmissible since the deception was not of a type reasonably likely to procure an untrue statement. (*People* v. *Atchley,* 53 Cal.2d 160, 171 [346 P.2d 764] [cert. dism., 366 U.S.

came final long before those decisions were rendered. (*Johnson* v. *New Jersey,* 384 U.S. 719 [16 L.Ed.2d 882, 86 S.Ct. 1772]; *People* v. *Rollins,* 65 Cal.2d 681, 691 [56 Cal.Rptr. 293, 423 P.2d 221]; *In re Lopez,* 62 Cal.2d 368, 372 [42 Cal.Rptr. 188, 398 P.2d 380].)

[5]Although petitioner's testimony at his trial regarding his arrest differed in some respects from that of the officers (e.g., whether petitioner had a gun in his hand when the officers entered) the Solano County Superior Court appears to have relied on the officers' version.

207 (6 L.Ed.2d 233, 81 S.Ct. 1051); see also 400 U.S. 446 (27 L.Ed.2d 524, 91 S.Ct. 485)]; cf. *People* v. *Arguello,* 65 Cal.2d 768, 775 [56 Cal. Rptr. 274, 423 P.2d 202]; see Witkin, Cal. Evidence (2d ed. 1966) pp. 446-448.)

■ Nor did petitioner's response "I have nothing to say" render his ensuing admissions inadmissible. (Compare *Frazier* v. *Cupp,* 394 U.S. 731, 738-739 [22 L.Ed.2d 684, 692-693, 89 S.Ct. 1420].) And although it does not appear whether petitioner was informed of his constitutional rights before he made the various statements, any such failure would not in itself be coercive but would go only to the weight to be given any evidence of actual coercion. (*Procunier* v. *Atchley, supra,* 400 U.S. 446, 453 [27 L.Ed.2d 524, 530].)

We conclude, contrary to the holding of the Solano County Superior Court, the combination of circumstances revealed by the police do not show that petitioner's statements were involuntary.

The Solano County Superior Court also found that "while [petitioner's] requests for counsel were ignored, the time for his first appearance in court was delayed, and his arraignment was postponed for 17 to 24 days while he was questioned by police for the purpose of getting incriminating statements." The record shows: Petitioner was taken to the hospital following his arrest on December 20, 1946, and was released from the hospital on December 30, 1946, for transportation to jail. On January 3, 1947, he was indicted, and his arraignment was set for January 7, 1947. On that date he appeared without his attorney, and the matter was continued to January 14, 1947, at which time he appeared with his attorney and was arraigned. All petitioner's statements to the police were made on or before December 30, 1946. It does not appear that "his requests for counsel were ignored."

Assuming that January 7, 1947, was the first date petitioner was brought into court, more than the period specified in Penal Code section 825[6] elapsed following his arrest before he was brought before a magistrate. ■ However, it would be an unreasonable application of that section to require that a hospitalized defendant be taken before a magistrate until it was possible to do so without jeopardy to his health (*People* v. *Lane,* 56 Cal.2d 773, 781 [16 Cal.Rptr. 801, 366 P.2d 57]), and most of petitioner's statements were made before his release from the hospital. ■ In any

---

[6]Penal Code section 825 provides: "The defendant must in all cases be taken before the magistrate without unnecessary delay, and, in any event, within two days after his arrest, excluding Sundays and holidays . . . ."

event delay in arraignment is but one factor to be considered in determining whether a confession is voluntary. (*People* v. *Kendrick,* 56 Cal.2d 71, 85 [14 Cal.Rptr. 13, 363 P.2d 13]; see *Rogers* v. *Superior Court,* 46 Cal.2d 3, 10 [291 P.2d 929].) ▉ The rule of *McNabb* v. *United States,* 318 U.S. 332 [87 L.Ed. 819, 63 S.Ct. 608], that any confession obtained during an illegal detention is ipso facto inadmissible has not been adopted in California. (*People* v. *Bashor,* 48 Cal.2d 763, 765 [312 P.2d 255]; *Rogers* v. *Superior Court, supra*; see Witkin, Cal. Evidence (2d ed. 1966), pp. 454-455.) In our opinion any delay in petitioner's arraignment, in combination with the other circumstances set forth above, did not render his statements involuntary.

The Solano County Superior Court's order also recited (1) that when petitioner was arrested he was beaten on the head with a gun butt "so hard that the handle of the gun was broken"; (2) that he "requested counsel" (apparently at the scene of his arrest or en route to the hospital); (3) that "[a]t the hospital medication was withheld until he talked"; and (4) that the duration of the interrogation before petitioner made the 45-page statement (apparently the statement transcribed by Bechtel) was "48 hours." The record contains no substantial evidence supporting any of these matters.[7]

▉ In his brief on appeal petitioner further asserts that when he made the statements his intellect was "impaired by insanity." In his petition he similarly alleged that he was "incompetent" and "suffering from acute paranoid schizophrenia" when he made the statements. At petitioner's murder trial the Los Angeles County Superior Court found that petitioner

---

[7]It appears from Officer Wynn's testimony that he hit petitioner twice on the head with a gun butt, but the testimony of Wynn and the other officers does not show that petitioner was hit "so hard that the handle of the gun was broken." An August 25, 1949, statement made by petitioner while confined at Mendocino State Hospital contains a statement supporting the quoted words, but such a self-serving extrajudicial statement made while confined at a mental hospital after being adjudicated insane cannot be regarded as substantial proof of the matter asserted.

There is no evidence that petitioner requested counsel at the scene of his arrest or en route to the hospital, and to the contrary at the habeas corpus hearing when asked "Did you at the time of your arrest seek an attorney?" petitioner answered "No."

Nor does the record contain any evidence that "[at] the hospital medication was withheld until [petitioner] talked." It appears from Officer Rombeau's heretofore quoted testimony that while being examined by a physician at the hospital on December 20, 1946, petitioner requested opiates, but whether or not opiates were furnished him does not appear.

There is no evidence supporting the fourth matter set forth above. As the recited facts show, petitioner was interrogated by officers on December 20, but the duration of the questioning on that day was not established. On the morning of December 21, petitioner was questioned by Wynn for an hour during which he made the incriminating statements that were thereafter repeated and transcribed by Bechtel.

was sane when he committed the crimes (in April and June 1946) and also commented that he "is now . . . sane" (June 1947). On appeal this court declared that the record "affords abundant support for the conclusion that he was sane [at the time of the crimes]." (*People* v. *Walker, supra,* 33 Cal.2d 250, 257.) At the habeas corpus hearing conflicting psychiatric testimony was introduced relating to petitioner's mental condition when he made the statements (December 1946). In the absence of an express or implied determination by the Solano County Superior Court we cannot hold that as a matter of law petitioner was insane when he made the statements. (Cf. *People* v. *Kanos,* 70 Cal.2d 381, 385 [74 Cal.Rptr. 902, 450 P.2d 278]; *People* v. *Henry,* 65 Cal.2d 842, 846 [56 Cal.Rptr. 485, 423 P.2d 557].) The Solano County Superior Court made no express finding on that subject, nor can such a finding be implied. The court specified in its order why it concluded petitioner's statements were involuntary, and those reasons do not include that he was then insane. Also the court, in connection with other issues, indicated it was not deciding petitioner's mental state at the times of the crimes or trial, and it would be unreasonable to assume that the court decided whether petitioner was insane at an intervening time, i.e., when petitioner made the statements.

■■■ In his brief on appeal petitioner also asserts that he "was told his family would be jailed if he didn't talk [apparently at the scene of the arrest]," and petitioner points to an exhibit consisting of a statement by petitioner on August 25, 1949, containing the quoted matter. The Solano County Superior Court, however, made no express finding that such a statement was made to petitioner, nor can such a finding be implied. Petitioner's self-serving statement was made while he was confined at Mendocino State Hospital after being adjudicated insane and is not substantial proof of the fact asserted.

### 2. *Petitioner's Statements to Court-Appointed Psychiatrists*

At the sanity trial court-appointed psychiatrists testified concerning incriminating statements by petitioner to them. The Solano County Superior Court stated that, since the right to counsel at interviews by court-appointed psychiatrists was not established until *In re Spencer,* 63 Cal.2d 400 [46 Cal.Rptr. 753, 406 P.2d 33], (*In re Cowans,* 2 Cal.3d 733, 737 [87 Cal. Rptr. 499, 470 P.2d 635]), petitioner could now object to the receipt of the statements and that the admission of the statements was improper (evidently under *Spencer*). However, the court overlooked that *Spencer* was based on *Massiah* v. *United States,* 377 U.S. 201 [12 L.Ed.2d 246, 84 S.Ct. 1199], and *Massiah* "may not serve as the basis for collateral attack

upon judgments which have become final before the date upon which the United States Supreme Court rendered that decision [May 18, 1964] . . . ." (*In re Spencer, supra,* at p. 404, quoting from *In re Lopez,* 62 Cal.2d 368, 372 [42 Cal.Rptr. 188, 398 P.2d 380].) A fortiori *Spencer* does not apply to petitioner's case which became final in 1949.[8]

### 3. *Claim That Procedure Followed in Determining Degree and Penalty Was Invalid*

The Solano County Superior Court's order recites: "Before his sanity trial the petitioner was not advised that that would be his only hearing on . . . degree and penalty, and he did not personally join in the stipulation to submit those questions on the record. Moreover, since the charge was murder, with no specification of degree, there was no warning in the charge itself of the theory that it was first degree murder because of the felony murder doctrine."

■ Even if petitioner was not advised before the sanity trial "that that would be his only hearing on . . . degree and penalty," that manifestly would not by itself render the procedure invalid. ■ The matter of the stipulation was considered on his appeal (*People* v. *Walker, supra,* 33 Cal.2d 250, 266), and habeas corpus ordinarily may not serve as a second appeal. (*In re Waltreus,* 62 Cal.2d 218, 225 [42 Cal.Rptr. 9, 397 P.2d 1001].)

■ An accusatory pleading charging murder in the short form prescribed by Penal Code sections 951 and 952, without specifying the degree of murder, adequately apprises an accused of a first degree murder charge (*People* v. *Mosher,* 1 Cal.3d 379, 399 [82 Cal.Rptr. 379, 461 P.2d 659]; *People* v. *Terry,* 57 Cal.2d 538, 555 [21 Cal.Rptr. 185, 370 P.2d 985]), and it has long been settled that under such a charge the accused may be convicted of first degree murder on the theory that the murder was committed in the perpetration of one of the felonies specified in Penal Code section 189 (*People* v. *Golston,* 58 Cal.2d 535, 539 [25 Cal.Rptr. 83, 375 P.2d 51]; *People* v. *Witt,* 170 Cal. 104, 107-108 [148 P. 928]).

---

[8]*Arsenault* v. *Massachusetts,* 393 U.S. 5, 6 [21 L.Ed.2d 5, 7, 89 S.Ct. 35], cited by petitioner, is not contrary to the above conclusion. *Arsenault* gave retroactive effect to *White* v. *Maryland,* 373 U.S. 59 [10 L.Ed.2d 193, 83 S.Ct. 1050], which concerned the right to counsel at a preliminary hearing at which a guilty plea is entered.

4. *Claim That Petitioner Was Denied Effective Counsel at Trial and on Appeal*

a. *Counsel at Trial*[9]

■ The Solano County Superior Court found that petitioner "had a crucial defense [diminished capacity] available which was not presented on his behalf." The diminished capacity concept, commonly known as the *Wells-Gorshen* rule (see *People* v. *Morse,* 70 Cal.2d 711, 731 [76 Cal. Rptr. 391, 452 P.2d 607]), was first fully recognized in *People* v. *Wells,* 33 Cal.2d 330 [202 P.2d 53], which was filed in 1949. (See *People* v. *Hoxie,* 252 Cal.App.2d 901, 911 [61 Cal.Rptr. 37]; *People* v. *Williams,* 200 Cal.App.2d 838, 841-842 [19 Cal.Rptr. 743]; 14 Stan.L.Rev. 59, 73-74.) Since peititioner's trial ended in 1947 his counsel at trial manifestly cannot be regarded as constitutionally inadequate for any failure to anticipate the rule subsequently established in *Wells.*

The Solano County Superior Court also made certain findings relating to petitioner's claim of ineffective counsel at trial, but the findings are not supported by the record.[10] The facts found were alleged in the habeas corpus petition but were not admitted by the People or proven by evidence.

The Solano County Superior Court further found "petitioner saw his attorney no more than 40 minutes in all before the trial, 25 minutes of which were consumed in court appearances. There was only 5 minutes of

---

[9]Attorney Fred Girard represented petitioner at trial. Petitioner's uncle testified at the habeas corpus hearing that it was upon his recommendation that petitioner's father retained Girard to represent petitioner, that the uncle considered Girard "a very excellent criminal lawyer," and that before petitioner's trial Girard had been a deputy district attorney and previously had been in the public defender's office.

[10]The unsupported findings are:

(a) Defense counsel "made no independent investigation of the facts, such as the manner in which the incriminating statements were taken . . . ."

(b) Defense counsel failed to advise petitioner of (1) the effect of a single plea of not guilty by reason of insanity upon the guilt issue; (2) the "possible eventual penalty"; (3) the effect of a jury waiver; and (4) the possibility that there would be only one hearing. As to the first two matters, it may be noted that in response to examination at the time petitioner waived a jury, he stated that he understood that the single plea admitted the commission of the offenses charged and that the death penalty might be imposed.

(c) Defense counsel arranged for no "independent" psychiatric examinations. Not only is this finding unsupported by the record, but the psychiatrists who examined petitioner before the trial were court-appointed and in view of the unanimity of their opinions regarding petitioner's mental condition, defense counsel hardly could be faulted even if it be assumed he did not arrange to have another psychiatrist examine petitioner.

(d) Petitioner was denied access to counsel until sometime during the week which followed his first appearance in court.

private consultation." The court presumably based this finding on a similar allegation in the petition. However, that allegation is deemed denied. *(In re Saunders,* 2 Cal.3d 1033, 1047-1048 [88 Cal.Rptr. 633, 472 P.2d 921].) ▮ The only evidence on the matter presented at the hearing was petitioner's own testimony. When asked how often and for how long he met with his attorney before trial, petitioner replied "I *recall* two times that he saw me for about five minutes a piece, *it seemed,* and just before the trial I think he saw me in the anteroom in the court." (Italics added.) Petitioner further testified that before the trial his attorney's secretary interviewed him for about 10 minutes. Since over 20 years had elapsed since the trial and during that period petitioner underwent electric shock treatments, which cause amnesia, the foregoing evidence does not constitute substantial proof that the attorney saw petitioner *only* for the limited times testified to by petitioner.

▮ In addition the petition pointed to defense counsel's failure to seek a hearing on petitioner's competence at the time of trial and to object to the admission of petitioner's incriminating statements, and the petition alleged that defense counsel failed to argue against the death penalty. With respect to the latter matter, it is unclear from the record whether the allegation is correct, but assuming that it is, it does not establish that petitioner had constitutionally inadequate counsel at trial. Nor do the other foregoing asserted failures so establish. A request for a hearing on competence was unnecessary. *(In re Davis,* 8 Cal.3d 798, 808 [106 Cal.Rptr. 178, 505 P.2d 1018]; *People* v. *Westbrook,* 62 Cal.2d 197, 203 [41 Cal.Rptr. 809, 397 P.2d 545]; *People* v. *Ah Ying,* 42 Cal. 18, 21.)

Other matters alleged in the petition regarding petitioner's trial counsel either were not proven or do not establish that petitioner had constitutionally inadequate counsel at trial.

b. *Counsel on Appeal*[11]

Two days after *People* v. *Wells, supra,* 33 Cal.2d 330, was filed a rehearing was denied on petitioner's appeal. *(People* v. *Walker, supra,* 33 Cal.2d 250.) The Solano County Superior Court stated that the implications of *Wells* were "immediately" the subject of "much discussion" and that "Why its application to Walker's case was not considered [presumably by his appellate counsel] is purely speculative . . . ." Although testimony indicated that when *Wells* was filed it might well have provoked consider-

---

[11]Petitioner was represented initially on his appeal solely by attorney Fred Girard, but a rehearing was granted on that appeal and attorney Morris Lavine also represented petitioner on the rehearing.

able discussion, no evidence was presented that it did so within two days after it was filed or that it was then even widely known. ■ In our opinion petitioner's counsel on appeal cannot be held to have been constitutionally inadequate for failing within a two-day period to apprise himself of *People* v. *Wells, supra,* 33 Cal.2d 330, somehow and to advise this court of any applicability he believed it might have to petitioner's case. Moreover, matters not presented to the trial court cannot be considered on appeal (*People* v. *Merriam,* 66 Cal.2d 390, 396-397 [58 Cal.Rptr. 1, 426 P.2d 161]; *People* v. *Reeves,* 64 Cal.2d 766, 776 [51 Cal.Rptr. 691, 415 P.2d 35]; *People* v. *Arguello,* 61 Cal.2d 210, 213 [37 Cal.Rptr. 601, 390 P.2d 377]), and the transcripts on appeal contain no evidence that petitioner at the time of the murder was operating under a mental disability not amounting to legal insanity that prevented him from having the requisite intent for first degree murder;[12] nor does it appear that the court excluded any such evidence at the trial.

■ The Solano County Superior Court further found that defense counsel "did not communicate with . . . petitioner . . . during the appeal" nor "seek any medical attention for him." Even if it be assumed that these matters are adequately supported by the record, they are insufficient in themselves to establish that petitioner's two privately retained counsel on appeal were constitutionally inadequate.

The petition further alleged that "Counsel failed to notice any appeals and permitted the two attempted murder convictions to become final." However, it was not alleged, or proven, that either of the two attorneys retained to represent petitioner on appeal was also retained to represent him in an appeal from the attempted murder convictions.

### 5. *Asserted Denial of Due Process for Reasons Relating to Wells-Gorshen Rule*

The petition asserted that "The court refused to consider evidence of diminished capacity in determining degree." So far as appears the Solano County Superior Court did not reach this claim. The claim is again made on the instant appeal, and petitioner contends that such refusal denied him due process. According to petitioner, "[i]n finding first degree murder" the court commented "I recognize the fact that the defendant has what may be classified as an unstable personality; that he may be disturbed emotionally, but I think it would be true that most persons who choose

---

[12]The exhibits at the murder trial were not filed with us in this proceeding. Petitioner makes no claim that any of those exhibits show that at the time of the murder he was operating under such a disability.

for themselves a life of violent crime are unstable and disturbed. I believe that that cannot enter into our deliberations." The quoted comment, however, was made by the court in connection with determining the penalty —not the degree of the murder. Moreover, even had the court made the comment at the time it determined the degree of the murder an unstable personality and emotional instability are insufficient without more to show that petitioner harbored a mental illness or defect that prevented him from having the requisite mental state for first degree murder. Other transcript references given by petitioner likewise do not support his assertion that the court "refused to consider evidence of diminished capacity in determining degree." Petitioner's argument that he was denied due process by such refusal thus cannot be sustained.

Petitioner also argues that he was "denied due process when Sections 1016, 1020 and 1026 of the Penal Code were applied so that the State was not required to prove, and he was not permitted to disprove, that he was capable of forming the state of mind required for murder."[13] He asserts that at the time of his trial "[t]here was no plea he could have made that would have placed his mental state in issue [presumably meaning that even had he pleaded not guilty he could not have offered expert testimony regarding diminished capacity due to mental illness]," that "[t]his was remedied by" *People* v. *Wells, supra,* 33 Cal.2d 330, and that he cannot be denied the benefit of *Wells,* which was decided after his trial but before his judgment became final. Similar assertions were in his petition but so far as appears were not reached by the Solano County Superior Court.

*People* v. *Wells, supra,* 33 Cal.2d 330, 343-357, held that on the trial

---

[13]Penal Code section 1016, as it read at the time of petitioner's trial, enumerated five kinds of pleas that may be entered; they included "not guilty" and "not guilty by reason of insanity." The section then declared "A defendant who does not plead not guilty by reason of insanity shall be conclusively presumed to have been sane at the time of the commission of the offense charged . . . . A defendant who pleads not guilty by reason of insanity, without also pleading not guilty, thereby admits the commission of the offense charged." (Stats. 1927, ch. 677, § 1, p. 1148.)

Penal Code section 1020, as it then read, provided: "All matters of fact tending to establish a defense other than [former conviction or acquittal, once in jeopardy, or not guilty by reason of insanity] . . . may be given in evidence under the plea of not guilty." (Stats. 1927, ch. 677, § 3, p. 1149.)

Penal Code section 1026, as it then read, provided: "When a defendant pleads not guilty by reason of insanity, and also joins with it another plea or pleas, he shall first be tried as if he had entered such other plea or pleas only, and in such trial he shall be conclusively presumed to have been sane at the time the offense is alleged to have been committed. If the jury shall find the defendant guilty, or if the defendant pleads only not guilty by reason of insanity, then the question whether the defendant was sane or insane at the time the offense was committed shall be promptly tried . . . . If the verdict or finding be that the defendant was sane at the time the offense was committed, the court shall sentence the defendant as provided by law." (Stats. 1935, ch. 318, § 1, p. 1075.)

of the issues raised by a plea of not guilty to a charge of a crime which requires proof of a specific mental state, competent evidence that because of mental abnormality not amounting to legal insanity defendant did not possess the essential specific mental state is admissible. *Wells* pointed out (at p. 348) that "the conclusive presumption of sanity [in Pen. Code, §§ 1016 & 1026] is a conclusive presumption of *sanity*; it is *not* a conclusive presumption of *legal capacity to commit crime.*" Language in earlier cases was disapproved insofar as it might be deemed inconsistent with the views expressed in *Wells*.

It has been said that before *People* v. *Wells, supra,* 33 Cal.2d 330, trial judges consistently excluded psychiatric testimony from the guilt trial on the theory that any testimony by a physician regarding the defendant's mental state was pertinent only to the issue of insanity. Sections 1016 and 1026 provided a conclusive presumption of sanity, and trial judges inferred "there was an equally conclusive presumption that the defendant possessed the mental capacity to have intent, malice aforethought or other required elements of *mens rea.*" (See Donnelly, Goldstein & Schwartz, Criminal Law (1962) p. 688, note by Bernard Diamond.)

Here, unlike *People* v. *Wells, supra,* 33 Cal.2d 330, petitioner did not enter a not guilty plea but rather the single plea of not guilty by reason of insanity, "thereby admitting commission of the basic act which, if not qualified under the special plea, constitutes the offense charged. (Pen. Code, § 1016.)" (See *People* v. *Wolff,* 61 Cal.2d 795, 799 [40 Cal.Rptr. 271, 394 P.2d 959].) Whether a different plea would have been entered had *Wells* been decided before petitioner's trial is highly speculative. But even if petitioner might have pleaded differently had *Wells* been decided before his trial, it does not necessarily follow that he has been denied due process.

Although *People* v. *Wells, supra,* 33 Cal.2d 330, 351, declared that "To go beyond [the rule there enunciated] in excluding evidence . . . might transcend constitutional limits," it did not decide the matter.[14] A number

---

[14] A dissent by Edmonds, J., concurred in by Traynor, J., however, concluded that the exclusion of evidence tending to prove the defendant lacked the requisite criminal intent constitutes a denial of due process. (*People* v. *Wells, supra,* 33 Cal.2d 330, 358-359.) In a later habeas corpus proceeding brought by Wells, he argued that the exclusion of evidence of his state of mind deprived him of procedural due process by denying his right to present his defense. The majority rejected the argument, stating "The trial court's ruling was an error of law merely; there was no refusal to allow Wells to present a defense, but only a rejection of some evidence concerning the defense. Petitioner cites no authority, and we find neither authority nor reason, which suggests that the hearing requirement of due process is not satisfied by this court's appraisal of the effect of the erroneously excluded evidence." (*In re Wells,* 35 Cal.2d 889, 894 [221 P.2d 947].)

of jurisdictions have not adopted the diminished capacity concept (see 12 A.L.R.3d 1228), and with respect to a case tried in such a jurisdiction it was held that the exclusion of expert testimony concerning the defendant's alleged diminished capacity not amounting to legal insanity was not a violation of due process. (*Narten* v. *Eyman,* 460 F.2d 184, 190-191.)

We need not explore further, however, whether the exclusion of such testimony denied due process because here such evidence was not excluded. Rather petitioner and his attorney selected the plea to enter without the benefit of *People* v. *Wells, supra,* 33 Cal.2d 330. Although defense counsel was not constitutionally inadequate for any failure to anticipate *Wells,* petitioner was not barred from entering a not guilty plea, offering psychiatric testimony of diminished capacity if any was then available, and claiming error on appeal if it was excluded. Under the circumstances in our opinion petitioner has not been denied due process.

 Petitioner does not, and could not properly rely on the principle in *In re Zerbe,* 60 Cal.2d 666, 668 [36 Cal.Rptr. 286, 388 P.2d 182, 10 A.L.R.3d 840]. Under *Zerbe* "a defendant is entitled to habeas corpus if there is no material dispute as to the facts relating to his conviction and if it appears that the statute under which he was convicted did not prohibit his conduct." (See also *In re Crumpton,* 9 Cal.3d 463, 467-468 [106 Cal. Rptr. 770, 507 P.2d 74]; *People* v. *Mutch,* 4 Cal.3d 389, 396 [93 Cal.Rptr. 721, 482 P.2d 633].) The evidence at the trial including petitioner's own testimony and confession constituted ample proof that he murdered Officer Roosevelt during an attempt to perpetrate burglary. At the habeas corpus hearing the psychiatric testimony was conflicting as to whether at the time of the killing some 25 years earlier petitioner lacked the requisite intent for first degree murder.

### 6. *Claims Relating to Petitioner's Competency During Trial and on Appeal*

The petition asserted that the Los Angeles County Superior Court erred in failing to hold a Penal Code section 1368 hearing on petitioner's sanity and that he was incompetent at the time of his trial and on appeal.

The Solano County Superior Court stated: "The contention that [petitioner] was incompetent throughout the entire proceedings does not now require a decision. Although it appears that the court probably did entertain a doubt as to [petitioner's] competency, and should have ordered a separate hearing on that question, if the matter is retried, it will make no difference now what his condition then was . . . ."

### a. Whether the Los Angeles Superior Court Erred in Failing to Order a Penal Code Section 1368 Hearing on Petitioner's Sanity

From the above-quoted remarks it appears that the Solano County Superior Court did not rule on petitioner's claim that the Los Angeles Superior Court erred in failing to order a Penal Code section 1368 hearing on petitioner's sanity. That court should consider the issues relevant to that claim upon remand. The parties have not briefed on appeal several of those issues, including whether *Pate* v. *Robinson*, 383 U.S. 375 [15 L.Ed.2d 815, 86 S.Ct. 836], is fully retroactive and, if so, whether the record of petitioner's trial contains substantial evidence that he was then mentally incompetent (see, e.g., *People* v. *Laudermilk*, 67 Cal.2d 272 [61 Cal.Rptr. 644, 431 P.2d 228] [cert. den., 393 U.S. 861 (21 L.Ed.2d 128, 89 S.Ct. 139)]; *People* v. *Pennington*, 66 Cal.2d 508 [58 Cal.Rptr. 374, 426 P.2d 942]).

### b. Claim That Petitioner Was Incompetent During the Trial

The Los Angeles Superior Court did not order a Penal Code section 1368 hearing on petitioner's sanity but at the conclusion of the trial on his plea of not guilty by reason of insanity commented, "I am convinced . . . that the defendant was at the time of the [alleged crimes] and is now legally sane." At the habeas corpus hearing conflicting psychiatric testimony was introduced regarding his sanity during the trial, and, as heretofore appears, the Solano County Superior Court indicated it was not deciding that question. Accordingly, whether or not the claim may properly be made in this proceeding, we cannot hold that it warrants relief.

### c. Claim That Petitioner Was Incompetent on Appeal

The Solano County Superior Court did not reach a claim by petitioner that he was "incompetent" during his appeal and that such incompetence denied him an effective appeal and due process. The issues relating to the claim have not been briefed on appeal except that the People argue in general that the Solano County Superior Court erred in considering the petition in the absence of a satisfactory excuse for the long delay (see, e.g., *In re Swain, supra,* 34 Cal.2d 300, 302). As heretofore stated, petitioner asserts, and the People do not deny, that the matter of the delay was not argued in the court below. Also, if the claim of incompetency on appeal may properly be made in this proceeding, it presents a factual issue. Under the circumstances we have not reached on appeal the issues relating to the claim.

### 7. *Whether People* v. *Anderson, supra, 6 Cal.3d 628, Affects Petitioner's Case*

It has been suggested that under *People* v. *Anderson, supra,* 6 Cal.3d 628, petitioner's death sentence for the murder was invalid when it was imposed and the only legally authorized penalty for that crime was therefore life imprisonment (see Pen. Code, § 190), that the Governor's action thus increased the punishment by adding the condition "without possibility of parole" and may not reasonably be considered a commutation of the sentence within the meaning of former article VII, section 1, of our state Constitution, and that therefore petitioner should be deemed to have been serving a term of life imprisonment with possibility of parole from the time of his prison arrival in 1947.

The foregoing suggestion is based on a misconception of this court's position in *Anderson. Anderson* concluded that the death penalty is both cruel and unusual punishment (Cal. Const., art. I, § 6), and that the judgment in that case, insofar as it provided for the death penalty, should therefore be modified to provide for life imprisonment (the only alternative punishment provided by the Legislature for the crime there in question, namely, first degree murder (see Pen. Code, §§ 190, 190.1)). *Anderson* declared that "today's decision is fully retroactive,"[15] but the quoted statement does not mean that the death penalty has always been unconstitutional, as is apparent from the reasoning of this court in *Anderson.* It was there reasoned (at p. 650) that *"Judged by contemporary standards of decency,* capital punishment is impermissibly cruel" and that such punishment *"is now, literally"* an unusual punishment in view of the worldwide trend toward the abolition of capital punishment and the fact that the death sentence is rarely imposed in California and even more rarely carried out. (Italics added.)

At the time the death penalty was imposed for petitioner that penalty was constitutional for first degree murder (see e.g., *People* v. *Thomas,* 65 Cal.2d 698, 708 [56 Cal.Rptr. 305, 423 P.2d 233] [cert. den., 389 U.S. 868 (19 L.Ed.2d 143, 88 S.Ct. 140)]; *People* v. *Bashor, supra,* 48 Cal.2d 763, 765; *People* v. *Lazarus,* 207 Cal. 507, 514 [279 P. 145]), and the commutation to life without possibility of parole was within the Governor's power (see former art. VII, § 1, Cal. Const.).

---

[15]*Anderson* stated (at p. 657, fn. 45): "Inasmuch as today's decision is *fully retroactive,* any prisoner now under a sentence of death, the judgment as to which is final, may file a petition for writ of habeas corpus in the superior court inviting that court to modify its judgment to provide for the appropriate alternative punishment of life imprisonment or life imprisonment without possibility of parole specified by statute for the crime for which he was sentenced to death." (Italics added.)

It does not follow, however, that petitioner is entitled to no relief under *Anderson*. *Anderson* concluded that Penal Code sections 190 and 190.1, which provide for the punishment of death or life imprisonment for first degree murder, are unconstitutional insofar as they purport to authorize the imposition of the death penalty. Thus since *Anderson* the only valid punishment authorized by these sections for first degree murder is life imprisonment. And *Anderson* is "fully retroactive." (See fn. 15, *ante*.) Accordingly, any first degree murderer now subject to a greater sentence than life imprisonment for that offense may seek habeas corpus to have the sentence modified to life imprisonment if the judgment is final.

The statement in *Anderson* (p. 657, fn. 45) that *"any prisoner now under a sentence of death . . .* may [seek modification of the] judgment to provide for the appropriate alternative punishment . . ." (italics added; see fn. 15, *ante*) does not indicate that prisoners whose death penalties have been commuted to a term greater than the alternative provided by statute for the offense for which the death sentence was imposed may not obtain modification of their sentences. Rather the italicized words merely specify one type of prisoner who is entitled to relief under *Anderson*. It manifestly would be inequitable to hold that, although murderers now under sentences of death may have their sentences reduced to life imprisonment (which is with possibility of parole (see Pen. Code, § 3046)), murderers such as petitioner whose death sentences have been commuted to life imprisonment *without possibility of parole* are not entitled to have that restriction removed from their life sentences. The two groups are identical except that prisoners in the latter group have had their sentences commuted, not unlikely as a result of circumstances in mitigation of the offense. And no considerations have led us to conclude that such inequities should be permitted.

 Petitioner asserts that the Solano County Superior Court, rather than the Adult Authority, should determine whether he should be released on parole. We do not agree. In California the parole power is vested in the Adult Authority. (Pen. Code, §§ 5077, 3040.)

The order granting the writ of habeas corpus is reversed, and the case is remanded to the Solano County Superior Court for further proceedings not inconsistent with the views expressed herein. Petitioner's sentence of life imprisonment *without possibility of parole* for the murder is modified by the deletion of the italicized words. Petitioner is therefore entitled to apply to the Adult Authority for parole and to have his application duly considered.

Wright, C. J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.

**CLARK, J.**—I concur in reversing the order granting the writ of habeas corpus and in remanding the case to the Solano County Superior Court for further proceedings not inconsistent with the views carefully expressed in the majority opinion, but I dissent from modifying petitioner's sentence.

To now reduce petitioner's sentence to life imprisonment *with* possibility of parole, the majority must encroach upon the Governor's exclusive power of commutation. "The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution." (Cal. Const., art. III, § 3.) Commutation of a sentence—on conditions deemed proper—is an executive power vested solely in the Governor. (See Cal. Const., art. V, § 8 (formerly art. VII, § 1); *People* v. *Danielly* (1949) 33 Cal.2d 362, 383 [202 P.2d 18]; *People* v. *Tuthill* (1948) 32 Cal.2d 819, 827 [198 P.2d 505]; *In re Lindley* (1947) 29 Cal.2d 709, 729 [177 P.2d 918]; see also *People* v. *Odle* (1951) 37 Cal.2d 52, 58 [230 P.2d 345].)

Having concluded that the death penalty was both cruel and unusual punishment in *People* v. *Anderson* (1972) 6 Cal.3d 628 [100 Cal.Rptr. 152, 493 P.2d 880], this court modified Anderson's sentence to life imprisonment *with* possibility of parole because that was the only other penalty provided by the Legislature for first degree murder. (See Pen. Code, § 190.) However, it was a proper exercise of his power of commutation for the Governor to reduce petitioner's sentence to life imprisonment *without* possibility of parole. (See *Green* v. *Gordon* (1952) 39 Cal.2d 230, 232-233 [246 P.2d 38].)

Because neither *Anderson* nor any other case proscribes such punishment, to now further reduce petitioner's sentence is to invade the Governor's prerogative.

McComb, J., concurred.

Appellant's petition for a rehearing was denied March 20, 1974. McComb, J., was of the opinion that the petition should be granted.